**EDEN W. EX REL. Serene EVANS**

v.

**Thomas C. TARR**

Court of Appeals of Tennessee,
AT NASHVILLE.

April 08, 2015 Session

Filed May 8, 2015

John W. Gautier, Nashville, Tennessee, and Bryce W. McKenzie, Sevierville, Tennessee, for the appellant, Serene Evans.

David J. Silvus, Clarksville, Tennessee, for the appellee, Thomas Tarr.

## OPINION

Arnold B. Goldin, J., delivered the opinion of the Court, in which Brandon O. Gibson, J., and Kenny Armstrong, J., joined.

This is an action for damages arising from a motor vehicle accident in which a five-year-old child was struck after she ran into a roadway and in front of the Defendant/Driver's truck in a residential neighborhood in Clarksville. The trial court granted Defendant/Driver's motion for summary judgment upon determining that

Defendant did not breach the duty of care as a matter of law. We reverse and remand for further proceedings.

■ The following background facts precipitating this lawsuit are not disputed. In May 2011, Eden W., a five-year-old child, was struck by a Ford super-duty F250 pick-up truck operated by Defendant Thomas C. Tarr ("Mr. Tarr").[1] At the time of the accident, Mr. Tarr was a member of the military and a resident of the army base in Fort Campbell, Kentucky.[2] The accident occurred on Benwood Drive, a short, unlined residential road in Clarksville, Tennessee.

Mr. Tarr entered Benwood Drive behind a truck operated by his friend, Jonathan Wade ("Mr. Wade"). When Mr. Tarr and Mr. Wade turned onto Benwood Drive, a group of ten to twelve children was playing in the road. The children parted to the sides of the road to allow the vehicles to pass. Mr. Wade passed without incident. Mr. Tarr came to a complete stop, honked his horn, and began proceeding slowly down the roadway when Eden ran into the road from the left/driver's side. As she ran across the road, Eden was struck by the front right/passenger side tire of Mr. Tarr's truck.

In April 2012, Eden's mother, Serene Evans ("Ms. Evans"), filed an action for damages acting as Eden's mother and next friend. In her complaint as amended in October 2012, Ms. Evans alleged that Eden suffered injuries proximately caused by negligence on the part of Mr. Tarr. She asserted claims for common-law negligence and negligence *per se* under Tennessee Code Annotated §§ 55–8–128, 55–8–134, and 55–10205. Ms. Evans prayed for com-

pensatory damages in the amount of $250,000.00, including past medical expenses in the amount of $56,810.46.

Mr. Tarr answered in February 2013, denying allegations of negligence and "affirmatively aver[ring] that the accident ... was one which was unavoidable given the circumstances ... existing and [was] one for which no legal fault should be assessed." Following preliminary discovery, Mr. Tarr filed a properly supported motion for summary judgment in January 2014. Ms. Evans opposed the motion in May 2014. After further discovery, in July 2014, the trial court granted Mr. Tarr's motion for summary judgment. Ms. Evans filed a timely notice of appeal to this Court.

### Issues Presented

Ms. Evans presents the following issues for our review:

1. The trial court erred by granting summary judgment when it applied the incorrect standard of care applicable to drivers in the presence of children.

2. The trial court erred by granting summary judgment notwithstanding the existence of genuine disputes of material fact and the inferences therefrom that create a question for the jury of whether the Defendant breached the applicable standard of care.

### Standard of Review

Tennessee Code Annotated § 20–16–101 (Supp. 2014) governs the award of sum-

[1] In order to protect the anonymity of minor children, the Court, in its discretion, may elect to use initials for the children, their parents, and others. *K.B.J. v. T.J.*, 359 S.W.3d 608 n.1 (Tenn. Ct. App. 2011).

[2] Mr. Tarr left military service in March 2012 and is a resident of Indiana.

mary judgment in this case. The section provides:

In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:

(1) Submits affirmative evidence that negates an essential element of the non-moving party's claim; or

(2) Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

■■■ Under the statute and Tennessee Rule of Civil Procedure 56.04, summary judgment is appropriate only if the moving party is entitled to a judgment as a matter of law based on the undisputed facts. *E.g., Reelfoot Utility Dist. v. Samburg Utility Dist.*, No. W201301952-COA-R3-CV, 2014 WL 4243580, at *4 (Tenn. Ct. App. Aug. 27, 2014) (perm. app. denied Jan. 20, 2015) (citing Tenn. R. Civ. P. 56.04). " 'Generally speaking, a defendant moving for summary judgment may avail itself of one of two avenues: it may negate an essential element of the nonmoving party's claim, or it may establish an affirmative defense, such as the statute of limitations, that defeats the claim.' " *Doyle v. Town of Oakland*, No. W2013-02078-COA-R3-CV, 2014 WL 3734971, at *2 (Tenn. Ct. App. July 28, 2014) (quoting *Allied Sound, Inc. v. Neely*, 909 S.W.2d 815, 820 (Tenn. Ct. App. 1995)). Summary judgment under Rule 56.04 is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law[,]" regardless of which avenue the moving party pursues. *Id.* (citation omitted). We review a trial court's award of summary judgment *de*

*novo* upon the record with no presumption of correctness. *Moore v. State*, 436 S.W.3d 775, 783 (Tenn. Ct. App. 2014) (citation omitted).

**Discussion**

■■■ The plaintiff in an action for negligence, which is generally defined as the failure to exercise reasonable care, must establish five essential elements: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." *Giggers v. Memphis Housing Authority*, 277 S.W.3d 359, 364 (Tenn. 2009) (quoting *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)). The element of duty "is the legal obligation of a defendant to conform to a reasonable person's standard of care in order to protect against unreasonable risks of harm." *Id.* (citations omitted). " '[T]he imposition of a legal duty reflects society's contemporary policies and social requirements concerning the right of individuals and the general public to be protected from another's act or conduct.' " *Id.* at 365 (quoting *Bradshaw v. Daniel*, 854 S.W.2d 865, 870 (Tenn. 1993)). The question of whether the defendant owes the plaintiff a duty of care generally is a question of law to be determined by the courts. *Id.*

■■■ The question of whether a defendant breached the duty of care, on the other hand, generally is a question of fact for the finder of fact. *Hardeman Cnty. v. McIntyre*, 420 S.W.3d 742, 747 (Tenn. Ct. App. 2013). The assessment of the amount of damages and the apportionment of fault also are issues generally to be resolved by the finder of fact. *Meals ex rel. Meals v. Ford Motor Co.*, 417 S.W.3d 414, 419 (Tenn. 2013) (citations omitted); *Wilson v. Pickens*, 196 S.W.3d 138, 143

(Tenn. Ct. App. 2005) (citation omitted). Cause in fact and proximate causation likewise are questions to be determined by the finder of fact. *Haynes v. Hamilton Cnty.*, 883 S.W.2d 606, 612 (Tenn. 1994). Accordingly, we turn first to the degree of duty—or the standard of care—properly to be imposed upon Mr. Tarr under the circumstances of this case.

## Duty

Ms. Evans asserts that the trial court applied the incorrect standard of care in this case. In her brief, Ms. Evans asserts that the trial court erroneously relied on *Leach v. Metropolitan Government of Nashville and Davidson County*, No. M2000-01487-COA-R3-CV, 2002 WL 31528531 (Tenn. Ct. App. Nov. 15, 2002) (perm. app. denied Mar. 17, 2003), when it concluded that, as a matter of law, "a sudden act by a child can eliminate any liability by a driver." Ms. Evan's argument, as we understand it, is that the trial court applied the incorrect standard of care where it erroneously concluded that Eden's sudden act of running into the street "eliminated" Mr. Tarr's liability. Ms. Evans contends that this determination "is simply contrary to the applicable duty of care involving children." Ms. Evans observes that Tennessee law imposes a duty on drivers to take extra precautions in light of "childish behavior" and asserts that, "[a]lthough the trial court's order paid 'lip service' to this heightened standard of care, the court's legal reasoning shows that it did not fully appreciate the legal import of this duty of care."

Mr. Tarr, on the other hand, does not dispute that the law imposes a heightened duty of care on drivers when children are present, but asserts that "[t]he obligations of the driver are not limitless in that situation, however, as he simply must take precaution accordingly." Mr. Tarr asserts

that although the "articulation of the duty of a driver when children are known to be in the vicinity is somewhat vague by any measure[,] ... [the law] neither creates strict liability nor makes the driver the insurer of the child's safety." He submits, "[m]ost importantly, it does not create the presumption of negligence merely due to the occurrence of an accident." Mr. Tarr submits that the trial court imposed the correct standard of care.

It is undisputed in this case that Mr. Tarr was aware that children were present on and near the roadway when the accident occurred. In the statement of undisputed facts attached to Mr. Tarr's motion for summary judgment, he stated that, when he turned onto Benwood Drive, he "was traveling behind his friend, Jonathan Wade[ ]"; that "there were several children playing in the road[ ]"; and that "[t]he children moved to the sides of the road to allow the vehicles to pass." Additionally, Mr. Tarr does not dispute that the duty of care imposed on a driver is heightened when the driver is aware of the presence of children. He asserts, however, that his duty is not "limitless" and that he "did not become an insurer of Eden's safety." Mr. Tarr additionally asserts that Ms. Evans' "argument is essentially that the *Townsley* [237 S.W. 58 (Tenn. 1922) ] decision either creates strict liability or shifts the burden to the driver to prove that he was not negligent."

We begin our review by observing that, contrary to Ms. Evans' assertion, it does not appear that the trial court specifically relied upon *Leach* in this case. We note that the trial court cited no legal authority in its July 2014 order. In its order, the trial court stated, in pertinent part:

> The Court finds that because *Defendant was aware of the presence of children in the area, he had a heightened duty of care. However, this duty is not limit-*

less and a sudden act by a child can eliminate any liability of a driver. In this case, Plaintiff is unable to show any breach of a duty of care to the minor child by the Defendant. He carefully observed the children, including the minor Plaintiff on the road and only began to slowly move forward once the children had moved to the sides of the road and stopped to allow him to pass. In this case, the Defendant employed all reasonable precautions to avoid an accident. He was preceding at a lawful and reasonable rate of speed, maintained proper lookout and otherwise obeying the rules of the road. He simply was unable to avoid contact with the minor child when she unexpectedly ran out in the road after having moved to the side of the road to allow the vehicles to pass. Because the Plaintiff cannot show any breach of duty on the part of the Defendant, the Court finds that there is no genuine issue of material fact and the Defendant is entitled to summary judgment as a matter of law. (Emphasis added).

We observe that the trial court determined that Mr. Tarr's duty was "heightened" because he was aware that children were present and playing in the area, that the duty of care was not unlimited, and that "a sudden act by a child can eliminate any liability of a driver." As we perceive the trial court's ruling, the trial court determined that the facts pertaining to the occurrence of the accident were uncontroverted and that, based upon those facts, Mr. Tarr could not be found negligent, as a matter of law, because Eden's sudden act of running into the road "eliminated any liability[.]"

 Duty generally is defined as the obligation to exercise the degree of care that an ordinarily prudent person would exercise under all the circumstances.

Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 (Tenn. 1992). The courts of Tennessee have long held that drivers who are aware of the presence of children in the area have a heightened duty of care to take childish instincts and impulsive behavior into account, and to take precautions accordingly. Townsley v. Yellow Cab Co., 145 Tenn. 91, 237 S.W. 58, 58 (1922); Kim v. Boucher, 55 S.W.3d 551, 558 (Tenn. Ct. App. 2001) (perm. app. denied June 25, 2001); Staley v. Harkleroad, 501 S.W.2d 571, 573 (Tenn. Ct. App. 1973) (perm. app. denied Sept. 4, 1973); Russell v. Anderson Cnty., No. E2010-00189-COA-R3-CV, 2011 WL 486900, at *4 (Tenn. Ct. App. Feb. 11, 2011) (citations omitted). Tennessee statutes also impose a duty on drivers to "exercise proper precaution upon observing any child" and to take precautions as necessary under the circumstances to avoid endangering other persons. Tenn.Code Ann. § 55–8–136 (2012). The Tennessee Code provides:

(a) Notwithstanding the foregoing provisions of this chapter, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway, and shall give warning by sounding the horn when necessary, and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a roadway.

(b) Notwithstanding any speed limit or zone in effect at the time, or right-of-way rules that may be applicable, every driver of a vehicle shall exercise due care by operating the vehicle at a safe speed, by maintaining a safe lookout, by keeping the vehicle under proper control and by devoting full time and attention to operating the vehicle, under the existing circumstances as necessary in order to be able to see and to avoid endangering life, limb or property and to see and avoid colliding with any other vehicle or

*person,* or any road sign, guard rail or any fixed object either legally using or legally parked or legally placed, upon any roadway, within or beside the roadway right-of-way including, but not limited to, any adjacent sidewalk, bicycle lane, shoulder or berm.

Tenn.Code Ann. § 55–8–136 (2012) (emphasis added).

*Leach,* the case on which Ms. Evans contends the trial court relied, was an action under the Governmental Tort Liability Act ("GTLA") in which a tow truck operated by a governmental employee struck a mother and her three year old child. *Leach,* 2002 WL 31528531, at \*1. The accident at issue in *Leach* occurred after a child who was holding his mother's hand at a bus stop "broke free of his mother's restraint and darted into the path of the truck." *Id.* The mother pursued her child into the street and was seriously injured when struck by the truck; the child was killed. *Id.* The mother and her husband filed an action for damages to the mother and for the death of the child. *Id.* The trial court determined that there was no proof of comparative fault on the part of the mother and that the driver was negligent because he " 'should have seen what there was to be seen.' " *Id.* The trial court awarded the plaintiffs the maximum damage amounts permitted by the GTLA. *Id.* We reversed, holding "a motorist is under no duty to assume that an *escorted* child, in the restraint of an adult, will suddenly break free and run into traffic." *Id.*

In considering the circumstances present in *Leach,* this Court distinguished the duty of care owed to a child who is unaccompanied by an adult from the duty owed to a child who is accompanied by an adult. *Id.* at \*9–10 (quoting *Tetterton v. Foggie,* 253 S.C. 600, 172 S.E.2d 369 (1970); citing *see also Korbelik v. Johnson,* 193 Neb. 356,

227 N.W.2d 21, 25 (1975)). The *Leach* court observed that a driver cannot be "an insurer of every child's safety[,]" but a driver who is aware of children near the roadway is "charged with a high degree of care[ ]" in light of a child's propensity to act upon childish impulses. *Id.* at \*9 (quoting *Tetterton,* 172 S.E.2d 369). We observed that the degree of care owed to a child who is accompanied by an adult is less high because " 'it is only reasonable for a prudent person to assume, in the absence of any indication to the contrary, that the [adult] will guard against a childish impulse and give immediate warning of any sudden change in position which might place the child in peril.' " *Id.* (quoting *Tetterton,* 172 S.E.2d 369). Quoting the South Carolina Supreme Court, the *Leach* court stated:

> When a child, who is under adult restraint, breaks away from such adult and darts into the path of a motorist who is observing the rules of the road with respect to speed, control, and who is maintaining a proper lookout, the resulting injury to said minor is not actionable.

*Id.* at \*10 (quoting *Tetterton,* 172 S.E.2d 369). With respect to a driver's duty to a child who is not accompanied by an adult, we noted that the law imposes a heightened but not unlimited duty of care and that each case must be determined based on " 'its particular set of circumstances.' " *Id.* at \*9 (quoting *Tetterton,* 172 S.E.2d 369).

We reversed the trial court's judgment in favor of the plaintiffs in *Leach* upon determining that the evidence in that case preponderated against the trial court's finding that the defendant was negligent merely because he failed to "somehow have anticipated that [the child] would pull loose from his mother's clasp and dart into the street when [the defendant] was 75

feet away." *Id.* at *2. We noted in *Leach* that foreseeability is the test of negligence, even in cases that involve children. *Id.* (citing *Tompkins v. Annie's Nannies Inc.,* 59 S.W.3d 669 (Tenn. Ct. App. 2000)). We determined that, under the facts of that case, "it [could not] be reasonably said that [the defendant] should have anticipated that [the child] would disengage himself from his mother and dart into the street. Stated differently, it was not reasonably foreseeable that [the child] would break free of his mother and run into the street." *Id.*

The duty of care applicable to drivers when children are present and not accompanied by an adult was articulated by the Tennessee Supreme Court as early as 1922 in *Townsley v. Yellow Cab Company.* The *Townsley* court noted that "children of tender years are entitled to a degree of care from others proportioned to their inability to foresee and avoid the perils which they may encounter[.]" The *Townsley* court stated:

> "What would be but ordinary neglect, in regard to one whom the defendant supposed a person of full age and capacity would be gross neglect as to a child, or one known to be incapable of escaping danger."

*Townsley v. Yellow Cab Co.,* 145 Tenn. 91, 237 S.W. 58, 58 (1922) (quoting *Whirley v. Whitman,* 1 Head 610 (Tenn. 1858)).

■ The courts have held that, because " '[c]hildren, wherever they go, must be expected to act upon childish instincts and impulses[,] others who are chargeable with a duty of care and caution towards them[ ] must calculate upon this, and take precaution accordingly.' " *Id.* (quoting *Ficker v. Cleveland, C., C. & St. L. Ry. Co.,* 9 Ohio Dec. 804 (Ohio Super. 1898)). As noted above, the General Assembly likewise imposes upon drivers a duty to "exercise proper precaution upon observing *any*

child[.]" Tenn.Code Ann. § 55–8–136 (emphasis added). In sum, a driver's duty of care to anticipate childish impulses is not as high when a child is accompanied by an adult as it is when a child is not accompanied by an adult. *Russell,* 2011 WL 486900, at *5; *Leach,* 2002 WL 31528531, at *3. This distinction is predicated on the question of foreseeability, which is intrinsic to the imposition of duty. *Leach,* 2002 WL 31528531, at *2.

■ A driver's heightened duty to an unaccompanied child is not unlimited, however. *Id.* at *9. " 'When a driver has employed all reasonable precautions to avoid an accident, and a sudden act of a child creates an emergency rendering it impossible for the motorist to avoid striking the child, the accident is considered unavoidable and the motorist is not liable.' " *Id.* (quoting *Brown v. United States Fire Ins.,* 671 So.2d 1195 (La. Ct. App. 1996)) (citing *Scardina v. State Farm Mut. Auto. Ins. Co.,* 597 So.2d 1148, 1150 (La. Ct. App. 1992)). Thus, a motorist who is maintaining a proper lookout, driving at a lawful and reasonable speed, and obeying the other rules of the road "will not be held liable for injuries to a child who suddenly darts or dashes into the path of his vehicle from a *concealed* position in such a way that an accident cannot be avoided." *Id.* (quoting *Brown,* 671 So.2d 1195 (citing *Scardina,* 597 So.2d at 1150)). Whether the driver will be held liable "must be considered in light of [the] particular facts and circumstances[ ]" of the case. *Id.* (quoting *Brown,* 671 So.2d 1195 (citing *Scardina,* 597 So.2d at 1150)).

■ The initial question with respect to the determination of the standard of care is whether the child's acts were reasonably foreseeable. Additionally, although foreseeability is an element of duty and duty is a matter of law to be deter-

mined by the court, "at the summary judgment stage [the trial court] must view the evidence of foreseeability, risk and burden in the light most favorable to the non-moving party." *Martin v. Melton*, No. M2012-01500-COA-R3-CV, 2013 WL 6206865, at *4 (Tenn. Ct. App. Nov. 26, 2013) (perm. app. denied Mar. 3, 2014).

 It is undisputed in the current case that Mr. Tarr observed ten to twelve children, some as young as two or three years old, playing and chasing each other in the road when he turned onto Benwood Drive. It also is undisputed that five-year-old Eden was playing outdoors and was not under adult supervision. Additionally, Mr. Tarr testified in his deposition that, although he was aware of children playing in the area, he did not see Eden run into the street and became aware that he struck her only because the other children began to yell. Unlike the circumstances in *Leach*, there is no suggestion in this case that Eden suddenly pulled away from an adult's protective grasp or that she ran into the road from a concealed position. Viewing the evidence in the light most favorable to Ms. Evans, the nonmoving party, it was reasonably foreseeable in this case that one of the younger children would impulsively run into the roadway.

Although Mr. Tarr's duty was not limitless, to the extent that the trial court determined that Eden's act of running into the street, *without more*, "eliminated" the heightened standard of care in this case, that determination was in error. Because Eden and the other children were not accompanied by an adult and their presence was visible and known to Mr. Tarr, the law imposed upon Mr. Tarr a heightened duty of care to take into account childish instincts and impulsive behavior, and to take precautions accordingly. *Kim*, 55 S.W.3d at 558; *Leach*, 2002 WL 31528531, at *3 (citing *Staley v. Harkleroad*, 501 S.W.2d

571 (Tenn. Ct. App. 1973)). We accordingly hold that Mr. Tarr was under a heightened duty of care in this case.

The establishment of the proper duty of care does not end our inquiry, however. As in *Russell v. Anderson County*, the question in the current case is whether Mr. Tarr "exercised proper care and caution in operating his vehicle after becoming aware of the children's presence." *Russell*, 2011 WL 486900, at *5; *see also Leach*, 2002 WL 31528531, at *3. We turn next to the trial court's findings that the material facts in this case are not disputed and that, under those facts, Mr. Tarr was entitled to a judgment as a matter of law on the question of breach of duty.

### Material Facts: the Accident

In its July 2014 order awarding summary judgment to Mr. Tarr, the trial court stated:

> This case involves an accident involving a minor pedestrian. On May 12, 2011, the Defendant was driving from work to a friend's house. He was driving his personal vehicle and was following another vehicle driven by his friend, Jonathan Wade. When Wade and Tarr turned onto Benwood Drive in Clarksville, Tennessee, Wade stopped suddenly. Although Tarr was initially unaware of the reasons Wade had stopped in the middle of the roadway, Tarr was traveling at a speed and distance which allowed him to also stop in the roadway without issue. Tarr honked his horn after Wade stopped allowing people in the area to be aware of his presence. Upon stopping his vehicle, the Defendant saw a group of children who had been playing in the roadway. The children were blocking the roadway which had forced Wade and Tarr to stop in the middle of the road and Tarr to stop behind him. After his vehicle stopped

and Tarr blew his horn, the children were alerted to the presence of the vehicles and moved to the side of the street, with some on one side and some on the other. After the children moved out of the path of the vehicles and to the sides of the street, Wade, driving the front vehicle, slowly began to proceed down the road. After observing the children and their whereabouts, Tarr also began to proceed down the road at a very slow rate of speed. Without any warning, the Plaintiff, a five year old child, ran out or was pushed in front of the Defendant's truck and was struck by Defendant's truck.

Alisha Kahler was the only other adult who witnessed the event. She owns a house located on Helton Drive and was sitting on her porch at the time of the incident with a clear view of the area of Benwood and the incident. Her porch is positioned directly in front of Benwood Drive and she had been watching the kids playing in the street. She testified there were at least ten children ranging in age from two to three to fifteen playing on the road when the Tarr and Wade vehicles approached. In her deposition, Ms. Kahler testified that after the children had gotten out of the roadway and moved to the side of the road, and the Wade and Tarr vehicles began to move, that the Plaintiff minor child "just all of a sudden ... just darted out in front of the road." On page 9 of her deposition she stated "his truck had just started to roll, and then she ran out in the road." On pages 19 and 20, she testified "it happened so fast. Just all of a sudden she just darted in the road. And she was so close to his truck when she ran out, that it was like within seconds of her running out into the street, she got hit."

Upon review of the record, we agree with the trial court that the facts regarding the acts taken by Mr. Tarr and Eden with respect to the accident itself are not controverted. Our independent review of the entire record, including the parties' responses to opposing statements of undisputed facts and the depositions made part of the technical record, reveals the following facts:

Mr. Tarr obtained a truck driver certificate from the military. On May 12, 2011, Mr. Tarr was traveling behind Mr. Wade when they turned onto Benwood Drive. At least ten children were playing on the road when Mr. Wade and Mr. Tarr turned onto it. Mr. Tarr had visited the area approximately ten to twelve times prior to May 2011, was familiar with the road, and had encountered children playing there previously. A "children at play" warning sign is posted in the neighborhood.

On the day of the accident, Mr. Wade blew his horn, and the children moved to the sides of the road to allow the vehicles to pass. Mr. Wade passed down the road without incident after the children moved to the sides. Mr. Tarr stopped, blew his horn, and then proceeded very slowly. After Mr. Wade had passed down the road and Mr. Tarr had begun to move forward, Eden ran out into the road in front of Mr. Tarr's vehicle. Eden ran from the left/driver's side of the vehicle and was struck by the right/passenger-side front tire of Mr. Tarr's truck.

In his deposition, Mr. Tarr testified that the children playing on the roadway on the day of the accident were between the ages of approximately three to eleven. He stated that the children were "[c]hasing each other around[,]" playing with a ball, and appeared to be playing tag in and on both sides of the street, which was two lanes wide, approximately 600 feet long, unlined, and without sidewalks. Mr. Tarr testified, "I didn't see [Eden] up until after the

accident when I was getting her out from under my truck making sure she was okay." He stated that he did not recall seeing her before the accident and that "[s]he never went through [his] field of view." Mr. Tarr testified:

> I was behind John Wade in the Chevy truck. And he honked his horn and they moved to the side of the road, and he proceeded through. I waited until he got through the kids, and then I started I mean, just started rolling. And that's when the kids had started yelling. You know, that's — I figured something was wrong, and that's when I came to a stop.

It also is undisputed that the accident was witnessed by Alisha Kahler ("Ms. Kahler"), who was the only adult witness. Ms. Kahler stated in her deposition that she was sitting on her porch directly in front of the roadway when the accident occurred. She stated that at least ten children, ranging from two or three to fifteen years of age, were playing outside before the accident and testified that Eden "just ran right out in front of the road" as Mr. Tarr's "truck had just started to roll" after he had come to a complete stop.

Having determined that the facts regarding the occurrence of the accident are not disputed, we accordingly turn to whether, considering the evidence in the light most favorable to Eden, summary judgment was appropriate on the question of whether Mr. Tarr breached the standard of care in this case.

## Breach of Duty

Having determined that Mr. Tarr was under a heightened duty of care and that the material facts surrounding the incident of the accident itself are not disputed, we must next determine whether a jury reasonably could find that Mr. Tarr breached the standard of care in this case.

As noted above, questions of breach of duty and causation are questions of fact for the jury and "should not be determined by the trial court as a matter of law 'unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome.'" *Cullum v. McCool*, 432 S.W.3d 829, 840 (Tenn. 2013) (Holder, J., concurring in part and dissenting in part) (quoting *Haynes v. Hamilton Cnty.*, 883 S.W.2d 606, 612 (Tenn. 1994)).

*Staley v. Harkleroad* arose from an accident in which a child was injured after she ran suddenly into a heavily traveled highway. *Staley v. Harkleroad*, 501 S.W.2d 571, 572 (Tenn. Ct. App. 1973). The trial court entered a directed verdict in favor of the defendant driver on the basis that the defendant was not negligent as a matter of law. *Id.* at 573. This Court reversed and remanded the matter for a new trial upon determining that whether the driver took all precautions necessary under the circumstances was a question to be determined by the jury. *Id.*

The defendant in *Staley* relied upon *Nash v. Love*, 59 Tenn.App. 273, 440 S.W.2d 593 (1968), for the proposition that the intervening act of the child was the proximate cause of her injuries. *Id.* at 572. The *Staley* court distinguished the case from cases in which "the minor child ran out from between parked or stopped automobiles[,] and prior to running out, the child was in such a position that the defendant driver could not see the child, nor did the driver have any reason to suspect the presence of the child." *Id.* We noted the following facts in *Staley*:

> the defendant [the driver's father] and his driver saw the plaintiff child seventy-five to one hundred yards away; the child was on the shoulder of the highway, looking the other direction; the child never looked toward the defen-

dant's vehicle; the defendant's driver appreciated the possibility of the child coming out into the highway; the defendant started to warn his driver to sound the horn; the driver slowed his vehicle but did not sound the horn. Here we have a situation wherein the defendant and his driver owed a duty of care to the minor. The law as above cited places the duty on the defendant and his driver to calculate upon childish instincts and impulses, and to take precautions accordingly.

*Id.* at 573.

As discussed above, in *Leach,* the driver's duty of care was not "heightened" where the child in that case was under the supervision of an adult. The driver in *Leach* was operating a tow truck, towing a pick-up truck on Second Avenue in Nashville, and saw a young child running onto the street from a distance of approximately 75 feet. *Leach,* 2002 WL 31528531, at *2. Although the tow truck was proceeding at approximately 30 miles per hour and the driver applied his brakes immediately upon seeing the child, he was unable to bring his truck to a stop in time to avoid the accident. *Id.* The accident in *Leach* did not occur because the driver failed to observe the child in the roadway. Rather, it was simply impossible for the driver to bring his vehicle to a stop in time to avoid the accident. *Id.* Under those facts, the driver could not be found liable.

Upon review of the record, we observe that Mr. Tarr stated in his response to Ms. Evan's statement of undisputed facts that he did not see Eden specifically or individually, but saw the group of children playing and chasing each other. Mr. Tarr stated that he was not watching for any particular child, but watching the group of children. He stated that, after stopping, he proceeded down the middle of the roadway, attempting to keep an equal distance

from the sides of the road and from the children. He did not exit his truck before proceeding; did not roll down his window to look beyond his blind spot or to ask the older children if the roadway was clear; and did not sound his horn while passing down the road. Mr. Tarr acknowledged that there were other precautions he could have taken to prevent the accident.

In his deposition, Mr. Tarr testified that the children had moved to both sides of the road, onto the grass and on the edge of the road; that he was not sure where Eden was; and that Eden was "very small" and that he "did not see her." Mr. Tarr stated:

> I was in the middle of the road. I had just started to go. I had honked —— ... I had just started moving.... And little kids, like I said, started yelling. So I stopped, put it in park, unbuckled my seat belt, got out to check and see what was going on.... She was under the front right side, passenger's side of my truck.... Just past the bumper. ... Towards the wheel[.]

When asked "And you never saw her?" Mr. Tarr stated, "No, sir." When asked whether he had "any idea why [he] didn't see her[,]" Mr. Tarr replied:

> She was much smaller than the front of my truck, and I was glancing at both sides trying to make sure that nothing had went wrong.

Mr. Tarr stated that the frame of his truck "set approximately 28 inches off the ground" and that "[i]t's about six foot to the roof." When asked what part of the truck first contacted with Eden, Mr. Tarr replied, "I'm going to assume the bumper. I don't know." He also stated that the tire did not run over Eden. When asked if the size of his vehicle prevented him from seeing Eden in the roadway in front of him, Mr. Tarr testified:

I saw the group of kids, and I'm going to say yes, as I was passing her is when I'm going to assume it was—happened. I don't know if she was pushed or pulled out into the roadway, but up until then, all I had seen is the group of kids. I wasn't watching for any particular child. I was just watching the group of children.

The following questioning occurred:

Q: You [Mr. Tarr] have a small child who's in front of you who you've hit with the front of your vehicle, correct?

A: Yes, sir.

Q: And never saw her before you hit her, correct?

A: Correct.

Q: Okay. So with those facts, I'm just saying it seems to me that with the larger vehicle that you're in—do you think that prohibited you at all from seeing Eden?

A: I saw the group of kids, and I'm going to say yes, as I was passing her is when I'm going to assume it was—happened. I don't know if she was pushed or pulled out into the roadway, but up until then, all I had seen is the group of kids. I wasn't watching for any particular child. I was just watching the group of children.

Q: Correct. But do you believe, sitting here today, that your vehicle, your truck, prohibited you from seeing Eden before the accident?

A: Yes.

Q: Okay. Is that because your truck is elevated and she's a young, small child?

A: Yes, sir.

Q: Okay. And then when your—what did you hear or what did you—what sense did you have that something was really wrong at the time that you stopped and got out of your truck?

A: Just the way the children were yelling.

Q: Okay. It wasn't just a normal yell that they're playing on the playground type yell?

A: No, sir.

Q: Okay. What were they yelling, or what do you recall them yelling?

A: I don't really remember what they were saying. They weren't yelling any particular thing. They were just, you know, hey. That's about it.

When asked, "And then how long after you began to move did the accident happen?" Mr. Tarr testified, "It was within seconds ... Within three to five seconds of me starting to move, it had happened."

Mr. Tarr also testified that, on the day of the deposition, he still did not know whether Eden came from his right or left side. He also testified that, after Mr. Wade's vehicle had moved through the area where the children were, nothing impeded his view of the children on the sides of the road. When asked whether the elevation of his truck created a larger blind spot in front of the vehicle than would be the case with a smaller vehicle, Mr. Tarr responded "Correct." When asked, "Are there blind spots in the vehicle for the front of the vehicle?" Mr. Tarr replied, "other than the body line, no, I don't think so." We observe the following questioning:

Q: Okay. All right. You would agree that it's the driver's responsibility to make sure that the roadway is clear when driving on the roadway?

. . .

A: It's the driver's responsibility to look forward.

Q: Okay. But you would agree that, in doing so, it would be your responsibility to know what persons are in front or to the sides of your vehicle when passing?

. . .

A: I'm going to say it's your responsibility to know what's in front of you and to just try to keep aware of what's in front of you.

Mr. Tarr testified in his deposition that his view was not obstructed by Mr. Wade's vehicle, that he kept his foot on the brake as he moved forward, and that he did not know whether Eden entered the street from his left or right side. When asked how he explained the accident to a friend immediately afterward, Mr. Tarr stated, "I just told him, you know, I'd —— she was —— I just didn't see her ——[.]" There is no suggestion in this record that Mr. Tarr's view of the area along the sides of the roadway was impeded or that Eden ran into the road from between parked cars or from an otherwise concealed position.

■■■ At the summary judgment stage of the proceedings, the trial court's function is "not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Byrd v. Hall,* 847 S.W.2d 208, 212 (Tenn. 1993) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–255, 106 S.Ct. 2505, 2511–2513, 91 L.Ed.2d 202 (1986)). In order to create a genuine issue of fact for trial, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party[.]" *Id.* It is the same standard used to evaluate a motion for a directed verdict. *Id.* If an issue "may reasonably be resolved in favor of either party[,]" it is an issue to be resolved by the trier of fact and not by summary judgment. *Id.* (quoting *Liberty Lobby,* 477 U.S. at 249–255, 106 S.Ct. 2505). It is well-settled that:

[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or a directed verdict. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.

*Id.* (quoting *Liberty Lobby,* 477 U.S. at 249–255, 106 S.Ct. 2505).

■■■ As noted above, the only question now before us is whether a jury reasonably could find that Mr. Tarr breached the heightened standard of care to calculate upon childish instincts and impulses —— in other words, to anticipate that a child might act impulsively —— and to take precautions accordingly. In this case, it is undisputed that five-year-old Eden ran into the roadway suddenly. It also is undisputed that Mr. Tarr was aware of the presence of children as young as two or three years of age along the residential roadway; that the children had been running and playing in the roadway when Mr. Tarr turned onto it; that nothing impeded his view of the sides of the road or the children alongside the roadway; that he was traveling at a slow rate of speed; that he honked his horn once before proceeding slowly down the roadway; and that he was not aware that his truck had struck Eden until the other children started yelling. Mr. Tarr testified that he "just didn't see her."

As noted above, in its July 2014 order the trial court found that Mr. Tarr maintained a proper lookout and that, because Eden acted suddenly, Mr. Tarr's liability was "eliminated." In light of those facts that are uncontroverted and drawing all justifiable inferences in favor of Ms. Evans, as we are required to do at the summary judgment stage, we cannot say that reasonable minds could reach only one conclusion on the factual element of breach of duty. In light of those facts that are undisputed, a jury could conclude that Mr. Tarr did not maintain a sufficient lookout

or take all reasonable precautions, or that the accident was avoidable, where Mr. Tarr "just didn't see" Eden and where there is no evidence that she darted into the road from a concealed position. Whether Mr. Tarr breached the duty of care, therefore, is a question of fact for the jury. We accordingly reverse summary judgment in favor of Mr. Tarr.

### Holding

In light of the foregoing, summary judgment in favor of Mr. Tarr is reversed. Costs on appeal are taxed to the Appellee, Thomas C. Tarr. This matter is remanded to the trial court for the collection of costs and for further proceedings consistent with this opinion.