IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 5, 2018 Session

## MATTHEW EPPS v. MARY SONJIA THOMPSON ET AL.

**Appeal from the Circuit Court for Davidson County**
No. 16C987    Kelvin D. Jones, Judge

_____

#### No. M2017-01818-COA-R3-CV

_____

A landowner hired an individual she supervised at work to paint her house outside of work. The landowner provided the painter with material and ladders for the job. While he was using the folding ladder and painting one of the house's eaves, the painter fell to the ground and injured his wrist. The painter sued the landowner for damages, asserting the landowner was negligent for providing him with old ladders that were unsafe. The landowner moved for summary judgment, which the trial court granted after finding the painter was unable to prove cause in fact or proximate cause. The painter appealed, and we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which RICHARD H. DINKINS and W. NEAL MCBRAYER, JJ., joined.

Peter M. Olson, Clarksville, Tennessee, for the appellant, Matthew Epps.

Barbara Jones Perutelli, Nashville, Tennessee, for the appellee, Mary Sonjia Thompson.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

Mary Sonjia Thompson hired Matthew Epps in April 2015 to paint a house she owned in Joelton, Tennessee. Ms. Thompson provided Mr. Epps with paint, brushes, rollers, and two aluminum ladders. One of the ladders was an extension ladder, and the other one was a folding ladder. When Mr. Epps was painting the highest part of the house, he fell off the folding ladder and injured his right wrist. Mr. Epps filed a

complaint against Ms. Thompson[1] in which he alleged the ladders she provided were "old, loose, and not a safe appliance for the work required." Mr. Epps claimed Ms. Thompson violated her duty to provide Mr. Epps with a reasonably safe place and with safe appliances to paint her house. Mr. Epps sought money damages in an amount not to exceed $500,000.

The parties engaged in discovery, and both Mr. Epps and Ms. Thompson gave their depositions. Mr. Epps testified that Ms. Thompson was his supervisor at Metro and that when she offered him a side job outside of work where he could earn extra money, he was happy to take it. The job involved painting a shed and the window sills, trim, and eaves of a brick house. Mr. Epps explained that Ms. Thompson met him the morning he was to start the job and provided him with paint, brushes, rollers, an extension handle for the rollers, and two ladders. Mr. Epps worked on Ms. Thompson's house over the course of two or three weekends. He fell as he was painting one of the eaves, which was the highest point of the house that needed painting. He described his fall as follows:

Q: Well, why don't you describe to me how you fell?

. . . .

A: Well, what I had done - - this is exactly what I did. I walked around and looked for a position to put the ladder, and so I sat the - - the long ladder, the extension ladder, it wasn't working. It wasn't working. I tried to put it up on the house, and I tested it with my foot and shaked [sic] it, but it wasn't working right.

Q: All right. When you say, it wasn't working, explain.

A: It's just the brackets on the bottom of the foot wasn't working right. And then one latch on the . . . right side, it wasn't catching. It just didn't feel right. It wasn't catching right. So I was, like, no, I can't use this ladder. So I tried the other ladder. The brackets on the bottom of the foot, you know, was sticking. And so, I mean, I used it anyway. Her words - - her exact words to me - - I asked her about the ladders, and she said, well, they're old ladders, but they will work. So I'm not going to argue, because, like I said, that's my boss. I had no problems with her. So she wanted the job done, so my job was to get the job done. I wasn't there for me to question her about nothing.

---

[1]Mr. Epps also named Michael Thompson, Ms. Thompson's former husband, as a defendant. Mr. Epps agreed to dismiss Mr. Thompson from the case at the trial court level, and Mr. Thompson is not participating in this appeal.

Mr. Epps explained that he used the folding ladder to reach the eave of the house where he fell. Because an air conditioning unit was situated immediately below the highest point, he was unable to place the extension ladder in such a way that he could reach the top of the eave. The ground next to the house where Mr. Epps fell sloped away from the house, and he said he had trouble situating the folding ladder in a way that it seemed stable enough to use. Mr. Epps testified:

A: I went up and down [the ladder] a couple of times, shaking the ladder, because I couldn't get it to sit right, you know, and then I kept looking at the legs and trying to get the legs right. Couldn't get it to sit right. Once I got it stable to where I thought it was in a position to where I could finish this job up, then I went back up and proceeded to finish my work.

Q: And then tell me what happened when you fell.

A: I just started painting. And when I got to - - right at the end - - close to the end of . . . the peak [of the house eave] I just looked up at it and thought it looked okay. And then, like I said, I don't know if it was the devil or an act of God. The ladder just kicked out. It just kicked out.

Q: When you say, kicked out, does that mean fell over?

A: It just fell over. The ladder just kicked out.

Q: Did anything on the ladder break?

A: I don't know. When I hit the ground, I wasn't thinking about no ladder. I don't know if it broke or what. All I know is, when I hit the ground, I jumped up, and this part of my hand was facing me, . . . , so I wasn't thinking about no ladder.

Mr. Epps stated that he did not see the ladder after he fell, so he did not know if a step broke, a hinge came loose, or if the ladder failed in some other respect. He testified that it was "defective to the point where the legs [weren't] working right." Mr. Epps testified that his conversation with Ms. Thompson about the condition of the ladders occurred on his first day at her house, before he used either of the ladders. He was not sure whether he said anything to Ms. Thompson about the ladders' not being "up to par" after he started using them.

Ms. Thompson testified during her deposition that she did not stay at the house in Joelton to observe Mr. Epps while he painted her house. She stated that she met him there on the first morning of the job and then did not return until she heard that he had

fallen.  Ms. Thompson said that when she spoke with Mr. Epps about his fall, he told her something different than what he said during his deposition.

> I asked him how he got hurt, and he told me he was painting, and the little girl next door had hollered at him, and was asking him if my granddaughter was home to where she could play,[2] and he turned around to talk to her, and he said when he turned back around to start painting, that he just - - he didn't know what had happened.  He just fell off the ladder.

In response to a question regarding instructions she gave Mr. Epps about painting the house, Ms. Thompson testified as follows:

> A:  I didn't really give him any instructions.  We talked about the house.  I asked him again if he was sure he could do the job.  He said yes.  The only instruction I really gave him was to start on the front of the house, because that's where you could see the house first from the street.
>
> Q:  Curb appeal?
>
> A:  Yes.  And that's basically the only instruction was to paint the house and to paint the shed.
>
> Q:  Did you supervise any of his work?
>
> A:  No, I did not.
>
> Q:  Was anybody there to assist him?
>
> A:  No.

Ms. Thompson testified that she purchased the folding ladder "somewhere around 2004, maybe."  She denied having any conversation with Mr. Epps about the safety of the ladders before he began painting.  She believed that Mr. Epps fell because he was distracted by the child next door, not because there was anything wrong with the folding ladder he was using.

Ms. Thompson filed a motion seeking summary judgment.  She argued that Mr. Epps had insufficient evidence to establish either the legal cause of his injury or to show that she breached any duty she owed him.  The trial court agreed and granted Ms. Thompson's motion, dismissing Mr. Epps' complaint with prejudice.  It wrote:

---

[2]Either Ms. Thompson's son or daughter was living in the house in Joelton that Mr. Epps was painting.

The undisputed facts in this cause show that the Plaintiff was employed to paint the Defendants' house. Mary Sonjia Thompson, as the Plaintiff's employer did not breach any duty to the Plaintiff either under the theory that the employment was as an independent contractor or under the theory that the employment was a master servant relationship.

The Plaintiff alleged that the ladders provided to him by Ms. Thompson to paint the house were defective. However, the Court finds it to be undisputed, as deemed by the Plaintiff, that if the ladders were defective, then Ms. Thompson had no knowledge of any defects.

The Court holds that the Plaintiff was not aware of why the ladder fell, and had no facts to show causation. Therefore the Court finds that the Plaintiff's evidence is insufficient to establish the essential elements of his claim.

Mr. Epps filed a motion for additional findings of fact and to alter or amend the summary judgment, which the trial court denied. Mr. Epps then filed a notice of appeal. On appeal, Mr. Epps argues that the trial court erred in granting Ms. Thompson's motion for summary judgment.

## II. ANALYSIS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." TENN. R. CIV. P. 56.04; *see also Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 261-62 (Tenn. 2015) (quoting TENN. R. CIV. P. 56.04). Appellate courts review a trial court's decision on a motion for summary judgment de novo, with no presumption of correctness. *Rye*, 477 S.W.3d at 250 (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). A court ruling on a motion for summary judgment is required to construe the evidence "in the light most favorable to the nonmoving party" and to "resolve all inferences in the nonmoving party's favor." *Rains v. Bend of the River*, 124 S.W.3d 580, 587 (Tenn. Ct. App. 2003) (citing *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002); *Johnson v. LeBonheur Children's Med. Ctr.*, 74 S.W.3d 338, 342 (Tenn. 2002)).

If the party moving for summary judgment does not bear the burden of proof at trial, the movant will be entitled to succeed on the motion if he or she:

(1) Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or

(2) Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

Tenn. Code Ann. § 20-16-101; *see Eden W. ex rel. Evans v. Tarr*, 517 S.W.3d 691, 695 (Tenn. Ct. App. 2015) (stating that defendant moving for summary judgment must either negate an essential element of the plaintiff's claim or prove an affirmative defense that defeats the plaintiff's claim) (citing *Doyle v. Town of Oakland*, No. W2013-02078-COA-R3-CV, 2014 WL 3734971, at *2 (Tenn. Ct. App. July 28, 2014)). Once the moving party satisfies these requirements, the nonmoving party "must demonstrate how these requirements have not been satisfied." *Rains*, 124 S.W.3d at 587 (citing *Bain*, 936 S.W.2d at 622). "[T]he nonmoving party 'may not rest upon the mere allegations or denials of [its] pleading,' but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, 'set forth specific facts' *at the summary judgment stage* 'showing that there is a genuine issue for trial.'" *Rye*, 477 S.W.3d at 265 (quoting Tenn. R. Civ. P. 56.06).

The basis of Mr. Epps' claim is that Ms. Thompson was negligent by providing him with old ladders that were not suitable for his use in painting her house. Our Supreme Court has addressed the elements a plaintiff must prove to establish a prima facie case of negligence:

> In order to establish a prima facie claim of negligence, basically defined as the failure to exercise reasonable care, a plaintiff must establish the following essential elements: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause."

*Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009) (quoting *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)). "'Causation [in fact] and proximate cause are distinct elements of negligence, and both must be proven by the plaintiff by a preponderance of the evidence.'" *Hale v. Ostrow*, 166 S.W.3d 713, 718 (Tenn. 2005) (quoting *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993)). A defendant's conduct constitutes the "cause in fact" of a plaintiff's injury if the injury would not have occurred "but for" the defendant's conduct. *Id.* When determining whether proximate cause exists, a court considers whether the injury that occurred was reasonably foreseeable by the defendant. *Id.* at 719. The *Hale* Court explained that a three-pronged test is used to determine whether proximate cause exists:

> "(1) the tortfeasor's conduct must have been a "substantial factor" in bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the

manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence."

*Id.* at 719 (quoting *Haynes v. Hamilton Cnty.*, 883 S.W.2d 606, 612 (Tenn. 1994)).

The Supreme Court in *Rice v. Sabir*, 979 S.W.2d 305 (Tenn. 1998), explained that "'[f]oreseeability is the test of negligence."' *Rice*, 979 S.W.2d at 309 (quoting *Doe v. Linder Const. Co.*, 845 S.W.2d 173, 178 (Tenn. 1992)). "'If the injury which occurred could not have been reasonably foreseen, the duty of care does not arise, and even though the act of the defendant in fact caused the injury, there is no negligence and no liability."' *Id.* (quoting *Doe*, 845 S.W.2d at 178).

The trial court held that Mr. Epps "was not aware of why the ladder fell, and had no facts to show causation." Indeed, Mr. Epps testified during his deposition that he did not know what caused him to fall off the ladder. He said the ladder "just kicked out," but he did not know if he simply lost his balance, if the ladder itself failed, or if something else caused him to fall.

The facts here are not unlike the facts of *Lurks v. City of Newbern*, No. W2016-01532-COA-R3-CV, 2017 WL 384429 (Tenn. Ct. App. Jan. 26, 2017), where the plaintiff fell while walking on a sidewalk and sued the city for negligence. *Lurks*, 2017 WL 384429, at *1. The plaintiff asserted that the sidewalk was defective, and she introduced photographs showing the sidewalk's poor condition, but she did not know if she fell because of the sidewalk's condition. *Id.* She testified that she did not stumble before she fell, and she did not know if her foot hit anything that led to her fall. *Id.* The trial court held that the plaintiff had failed to prove the city was negligent because she could not connect her injury to the defective condition of the sidewalk. *Id.* at *3. The Court of Appeals affirmed the trial court's decision, explaining "we will not presume negligence simply because an accident occurred. A plaintiff must be able to prove causation." *Id.*; *see also Hickman v. Jordan*, 87 S.W.3d 496, 499 (Tenn. Ct. App. 2001) ("[N]egligence is not presumed from the mere fact of an accident or injury."). The *Lurks* court went on to say:

> "Negligence shall not be presumed absent an affirmative demonstration from the evidence. Therefore, in the context of injuries to plaintiffs resulting from a fall, mere speculation about the cause of an injury is insufficient to establish liability on a negligence claim. As such, a plaintiff will be prevented from establishing negligence when he, either personally or with the use of outside witnesses, is unable to identify what caused the fall. In other words, a plaintiff must know what caused him to slip and fall. A plaintiff cannot speculate as to what caused the fall."

*Lurks*, 2017 WL 384429, at \*3 (quoting *Pittinger v. Ruby Tuesday, Inc.*, No. M2006-00266-COA-R3-CV, 2007 WL 935713, at \*3 (Tenn. Ct. App. Mar. 28, 2007)); *see also Mullins v. Nash*, No. 01A01-9403-CV-00138, 1994 WL 485581, at \*2 (Tenn. Ct. App. Sept. 9, 1994) (affirming trial court's decision granting defendant summary judgment where record did not reveal cause of plaintiff's fall). Thus, Mr. Epps could not carry his burden on an essential element of his case, the condition of the ladder was a cause in fact of his fall and injury.

Turning to proximate cause, the trial court found that it was undisputed that if the ladders were defective, Ms. Thompson was not aware of the defects. This finding by the trial court is supported by the record. When Ms. Thompson filed her motion for summary judgment, she submitted a statement of undisputed material facts. In paragraph 26, she stated: "Ms. Thompson does not believe that either ladder was dangerous or defective. If they were defective, she had no knowledge of any defect." Mr. Epps responded to this paragraph by stating: "Admitted for the purpose of Summary Judgment." In his motion to alter or amend, Mr. Epps asked the trial court to reconsider his response, explaining that he had told Ms. Thompson that the ladders were "old," and that this statement by him should be interpreted as proof that Ms. Thompson was aware of the ladders' defective condition. The trial court denied Mr. Epps' motion to alter or amend, writing that the findings of fact it set forth in its earlier order granting the motion "were appropriate."

We agree with the trial court that Mr. Epps failed to put forth evidence establishing a genuine issue for trial concerning proximate cause. Mr. Epps has not pointed to any evidence showing that it was foreseeable to Ms. Thompson that Mr. Epps would suffer an injury as a result of the ladders' conditions. In support of his opposition to Ms. Thompson's motion for summary judgment, Mr. Epps submitted an affidavit by an engineer that he retained to inspect the ladders and give his opinion of the ladders' safety. The expert did not identify in his report the date when he inspected the ladders. His report is dated April 28, 2017, which is more than two years after Mr. Epps fell off the folding ladder. In addition, the expert focused on the condition of the extension ladder, not the folding ladder, and he did not link the folding ladder's condition to Mr. Epps' fall.

Ms. Thompson moved to strike the expert's affidavit because it did not meet the requirements of Tenn. R. Civ. P. 56.06. The record does not reflect whether the trial court ruled on Ms. Thompson's motion to strike. The trial court did not appear to rely on the expert's affidavit in granting Ms. Thompson's motion for summary judgment, and Ms. Thompson's motion to strike Mr. Epps' expert's affidavit is not an issue on appeal. In any event, we do not find that the expert's affidavit assists Mr. Epps because it fails to provide evidence establishing causation or proximate cause.

In a similar case where the plaintiff fell while walking on a piece of roofing material that the defendant used as a sidewalk, the plaintiff's expert did not inspect the

- 8 -

area where the plaintiff fell until close to a year after the fall. *Mullins*, 1994 WL 485581, at *2. Based on this lapse of time, we concluded that the plaintiff had "failed to present any evidence regarding the condition of the accident scene at the time she fell." *Id.* We also noted that "'[t]he mere possibility of a causal relationship, without more, is insufficient to qualify as admissible expert opinion.'" *Id.* (quoting *Lindsey v. Miami Dev. Corp.*, 689 S.W.2d 856, 862 (Tenn. 1985)). Here, Mr. Epps did not provide proof that Ms. Thompson's conduct was "'a substantial factor in bringing about the harm,'" or that "'the harm giving rise to the action'" was reasonably foreseeable "'by a person of ordinary intelligence and prudence.'" *Hale*, 166 S.W.3d at 719 (quoting *Haynes*, 883 S.W.2d at 612). Thus, Mr. Epps did not prove proximate cause.

Mr. Epps asserts that his relationship with Ms. Thompson was that of employer-employee, whereas Ms. Thompson asserts Mr. Epps was an independent contractor. *See, e.g., Galloway v. Memphis Drum Serv. & Liberty Mut. Ins. Co.*, 822 S.W.2d 584, 586 (Tenn. 1991) (discussing factors courts consider in determining whether worker is employee or independent contractor). Regardless of whether Mr. Epps was an employee or an independent contractor, Mr. Epps is not entitled to continue his action where he is unable to establish cause in fact or proximate cause, two elements of his claim for negligence.

III. Conclusion

The judgment of the trial court is affirmed. The costs of this appeal shall be assessed against the appellant, Matthew Epps, for which execution shall issue if necessary.

_____
ANDY D. BENNETT, JUDGE