*1097 OPINION OF THE COURT
Herbert Kramer, J.
Plaintiffs decedent, a three-year-old infant, fell to his death after he gained access to the terrace of his sixth-floor apartment through a door in his living room that had a broken lock. Defendants move for summary judgment on the theory that plaintiffs claims of negligence are based upon speculation.
Plaintiff administrator makes two claims upon which he premises negligence. The first is that the lock of the terrace door was broken and that, despite repeated calls to management to have it repaired, the lock was never fixed. The second claim made through the assertions of his engineering expert is that the ladder-like construction of the connecting pieces of terrace railing enabled the infant to climb up and over the railing to his death. Defendants argued that the terrace railing’s height conforms to code and that the presence of two chairs on the terrace indicates that the infant could have climbed over the railing through the use of the chairs. Defendants also argue that the infant’s mother’s inability to recollect whether the terrace door was open or closed when she left the plaintiffs decedent in the living room watching television while she got herself dressed undermines her claim with regard to the locking mechanism of the terrace door.
“In any negligence action, the threshold issue before the court is whether the defendant owed a legally recognized duty to the plaintiff.” (Gilson v Metropolitan Opera, 5 NY3d 574, 576 [2005].) Here, the claimed breaches of duty involved the failure to repair the door leading to the terrace and the construction of the terrace railing. “ ‘A land [lord] must act as a reasonable man in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk.’ ” (Basso v Miller, 40 NY2d 233, 241 [1976].)
Here, the question is whether a reasonable landlord with notice of a broken terrace door lock and with notice of the occupancy of young children in the subject apartment would quickly respond to a request to repair the lock on that door. If so, then in the absence of such reasonable care, the landlord may be held liable for injuries that can be viewed as a potential consequence of this circumstance.
Neither party has brought to this court’s attention, nor has this court’s research revealed, any regulatory provisions nor *1098 case law determinations governing terrace doors. However, in a closely related context, New York City Health Code (24 RCNY) § 131.15 (a) requires the owner of a multiple dwelling to provide, install and maintain window guards on the windows of each apartment in which a child or children under the age of 11 reside and makes it the responsibility of the owner to make that determination. The violation of this provision subjects the owner to penal sanctions. (People v Kaszovitz, 167 Misc 2d 638 [Crim Ct, Bronx County 1996].)
This significant piece of legislation with broad practical consequences in terms of costs evinces the awareness and concern of the public for the health and safety of children who are exposed to the dangers of falling from high-rise buildings. Is an unlocked door leading to a terrace in a high-rise building any less a threat to a child’s safety than an unguarded window? Yet, the property manager testified that they don’t put chain locks on the terrace doors of any of the apartments.
The lock on this door becomes all the more important when viewed in the context of the circumstances herein where the construction of the terrace railing was such as to allow a young child to easily climb over it. Defendants’ engineer testified that the railing was between 42V2 and 44 inches high. Plaintiff’s expert noted and the pictorial exhibits confirm that
“the rail inserts were constructed of metal grilles but were connected with horizontal rungs to the vertical posts at each end of the grill section. The rungs were approximately 12 inches apart so that they functioned essentially as a vertical ladder especially for an infant who could easily use the rungs as a ladder to climb.”
Again, the parties have not brought to this court’s attention, nor has this court discovered, any regulation governing the construction of terrace railings inserts, notwithstanding that terraced apartments in our city can be located well upward of 20 stories above ground level. Interestingly and by way of contrast, there is a regulation governing the construction of scaffolding with elevations of greater than seven feet, which requires this scaffolding to have safety railings on its open sides that have a wire mesh screen of not less than number 18 U.S. gage steel with openings that will reject a one-inch diameter ball. This meshing must be installed between the toeboard and the top guardrail on both ends and on the outboard side of the scaffold platform. (12 NYCRR 23-5.1 [j] [1], [2].)
*1099 In the absence of a governing statute, code or rule, the determination of whether there is a legally cognizable duty owed by this landowner should be made “by balancing factors, including the reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability.” (Gilson v Metropolitan Opera, 5 NY3d 574, 576-577 [2005].)
As to the reasonable expectations of the parties and society generally, the above-cited window guard provisions and scaffolding provisions, while not controlling, evince a legislative awareness and a public concern with height-related hazards and an intent to protect those individuals who either by virtue of age or occupation are not in a position to determine for themselves the safety and security of their environments and protect themselves against inherent dangers. As to the potential of this determination opening the door to a proliferation of claims and unlimited insurer-like liability, this court was unable to find any other published decision involving a child’s fall from a terrace and thus it is unlikely that such a determination will cause claims to proliferate. However, the risk is so great and the cost of responding to a call to fix a chain lock is so low, that imposition of such duty is mandated.
Accordingly, this court holds that plaintiff’s decedent was entitled to the minimal protections of a working chain lock on a door that provided access to a terrace six stories above ground level. This court further holds that a terrace railing in a highrise dwelling that creates a ladder-like effect is not reasonably safe.
The defendants’ argument that the proof is too speculative because the door could have been left open or the child could have climbed on a chair is rejected. Although there is no witness to this tragic event and the plaintiffs claimed evidence is wholly circumstantial, it is nonetheless sufficient because plaintiff
“ ‘shows facts and conditions from which the negligence of the defendant and the causation of the accident by that negligence may reasonably be inferred.’ The law does not require that plaintiffs proof ‘positively exclude every other possible cause’ of the accident but defendant’s negligence. Rather [his] proof . . . render[s] those other causes suf *1100 ficiently ‘remote’ or ‘technical’ to enable the jury to reach its verdict based not upon speculation, but upon the logical inferences to be drawn from the evidence.” (Schager v Midway Shopping Center Ltd. Partnership, 1999 WL 354553, *3 [Sup Ct, NY County 1999] [citations omitted].)
Indeed, if the jury credits Abimbola Adekunjo’s statements that she always kept the door to the terrace closed, and called repeatedly for someone to fix the lock, then it could be inferred that the absence of the lock on the terrace door which gave the three year old access to a terrace with a readily scalable railing was a substantial factor in the cause of this tragic occurrence.
The defendants’ motion for summary judgment is denied.