IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 11, 2020 Session

## HEUN KIM ET AL. v. STATE OF TENNESSEE

**Appeal from the Tennessee Claims Commission**
**No. T20140245       James A. Hamilton, III, Commissioner**

_____

### No. W2019-01027-COA-R3-CV

_____

This matter is before the court for a second time. Plaintiffs filed a negligence suit in the Tennessee Claims Commission against the State of Tennessee after their six-year-old son fell from the fifth-floor balcony of the state-owned and -operated Paris Landing State Park Inn. Plaintiffs alleged that the State was negligent in two respects: 1) in allowing their son to gain access to an unoccupied guest room and the attached balcony, and 2) in maintaining balcony railings that were shorter in height than was required by applicable building codes. Following a bench trial, the Tennessee Claims Commissioner concluded that the Plaintiffs failed to establish that the State's negligence was the proximate cause of their son's injuries. Plaintiffs appealed to this Court, and we held that the Commissioner's conclusions of law were deficient and vacated and remanded the case for further consideration. On remand, the Commissioner entered a supplemental order that included additional conclusions of law as to both claims for negligence, and, again, determined that the Plaintiffs failed to meet their burden of proving that the Inn's acts were the proximate cause of their son's fall and dismissed the claim in its entirety. Plaintiffs again appeal. We affirm the Commissioner's holding that Plaintiffs failed to establish that the negligence of the Inn was the proximate cause of their son's injuries.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Tennessee Claims Commission Affirmed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN and KENNY W. ARMSTRONG, JJ., joined.

Charles L. Holliday, Jackson, Tennessee, for the appellants, Heun Kim, and Joung Kim.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; Laura Miller, Assistant Attorney General, for the appellee, State of Tennessee-Civil.

# OPINION

## FACTUAL AND PROCEDURAL BACKGROUND

Since this case is being appealed to this Court for a second time, and the facts are not disputed by either party, we adopt our previous recitation of the factual background provided in ***Heun Kim v. State***, No. W2018-00762-COA-R3-CV, 2019 WL 921039, at *1–3 (Tenn. Ct. App. Feb. 26, 2019). The facts are as follows:

> The relevant facts in the present case are largely undisputed. Heun Kim ("Mr. Kim") and his wife Joung Kim ("Mrs. Kim" or, collectively, "the Kims") attended a church retreat at the Paris Landing Park State Inn ("the Inn") over Labor Day weekend of 2012. The Kims' two sons, Aaron and Daniel, were also in attendance, and the family stayed in room 509 of the Inn's "A-wing." On the morning of September 3, 2012, the Kims checked out of their room at approximately 11:30 a.m. but remained on the premises to do various activities with their church group. Meanwhile, Mary Wright ("Ms. Wright"), a housekeeper employed by the Inn, cleaned room 509 around noon.

> Later in the afternoon, as the Kims' church group prepared to leave, Daniel became separated from his mother in the midst of the activity. In search of her, Daniel made his way back up the elevator to room 509. Upon reaching the guest room, Daniel found the door to be unlocked and slightly ajar and proceeded into the room. Daniel then gained access to the balcony of room 509. Ultimately, Daniel fell from the fifth floor balcony and sustained significant injuries to his face, head, and one of his legs.

> The Kims filed suit against the State of Tennessee ("the State") in the Tennessee Division of Claims Administration on August 21, 2013, and the case was later transferred to the Tennessee Claims Commission ("the Commission"). The Kims alleged that the State had a duty to its guests to control access to unoccupied guest rooms, and, alternatively, that the balcony railing over which Daniel fell was a dangerous condition that was negligently maintained by the Inn. The Kims' theory was that the Inn was negligent in allowing a small child to gain access to an unoccupied guest room, thereby resulting in Daniel's fall. Alternatively, the Kims alleged that the guard rail to the balcony was a dangerous condition, specifically that the railing was "dangerously short ... and constructed in such a manner that it would encourage a young child to climb onto the railing." *See* Tenn. Code Ann. § 9-8-307(a)(1)(C) & (E). The State answered by alleging that the Kims' comparative fault in failing to adequately supervise Daniel precluded the Kims from recovering any damages. Further, the State raised the issue of

liability on the part of the contractor who installed the balcony railings in 2004.

Soon after, the State moved for summary judgment, urging that the Kims' negligent care and control claim under section 9-8-307(a)(1)(E) failed as a matter of law because Daniel was never in the care or custody of the State. Second, the State argued that it owed no duty of care to prevent the accident and, alternatively, that the Kims could not establish that any actions on the State's part were the proximate cause of Daniel's injuries. The Claims Commissioner ("the Commissioner") denied the motion in part, determining that the State indeed owed a duty of care to the Kims, and that questions of fact remained regarding proximate cause. As such, the Kims' claim under section 9-8-307(a)(1)(C) survived. The Commissioner did, however, grant summary judgment to the State as to the claims related to section 9-8-307(a)(1)(E) for negligent care, custody, and control of persons. The case proceeded to a three-day trial beginning on February 12, 2018.

The Commissioner heard testimony from several witnesses, including Mr. and Mrs. Kim, Daniel, Ms. Wright, other members of the housekeeping staff, and various staff members of the Inn. The testimony of the witnesses reflected largely the same account of the events of September 3, 2012.

Mr. and Mrs. Kim testified at length about the day of Daniel's fall. It was undisputed that late in the afternoon, around 4:00 p.m., Mrs. Kim lost track of Daniel. Both parents testified that they searched for Daniel for approximately five minutes before a member of the Inn's staff informed them that Daniel had been found outside. Mr. Kim testified that Daniel was hospitalized for nearly a week after his fall, and had to wear a cast on his leg and use a walker for several months afterwards. Further, Mr. Kim testified that he eventually missed so much work due to having to care for Daniel that Mr. Kim had to quit his job. He also stated that Daniel missed a semester of school while in recovery. Mrs. Kim also testified that since the fall, Daniel has largely recovered but that he does have a fear of heights and has expressed some anxiety over the concept of death. Daniel's recollection of his fall was similar to that of his parents, and he testified that when he returned to room 509 after becoming separated from his parents, he found the door to the room slightly ajar. Daniel also admitted that he intentionally climbed on top of the balcony railing because he could not see over it.

The Commissioner heard further testimony from several staff members of the Inn. This testimony reflected that Ms. Wright was the housekeeper who cleaned room 509 on September 3, 2012, and that she did so around noon. There was an unwritten, but undisputed, policy at the Inn

that once a room was clean, it must be locked in order to make sure that no one could access the unoccupied room. Moreover, Ms. Wright conceded that she had previously been reprimanded for neglecting to secure a room after cleaning it. According to Ms. Wright, the policy regarding the locked doors was meant to ensure the safety of the Inn as well as the cleanliness of the rooms. The head housekeeper, Gail Brake ("Ms. Brake") confirmed Ms. Wright's testimony regarding the policy on cleaned rooms. According to Ms. Brake, it was the Inn's policy, as well as general industry standard in all hotels, that a room should always be locked once a guest has checked out and the room has been cleaned. Moreover, Ms. Brake indicated that once a housekeeper has completed cleaning on a floor, the housekeeper is instructed to check every room on that floor to ensure it is locked. Moreover, all members of the housekeeping staff who testified noted that the doors in the A-wing where the Kims stayed were heavy and difficult to close; indeed, several witnesses testified that the A-wing doors would swell on hot days making those doors particularly difficult to secure.

The swelling of the doors in A-wing was also confirmed by the managers of the Inn who testified, as well as the facilities manager. Importantly, every staff member of the Inn that testified confirmed that if a guest had already checked out and returned their room key, and the room had been cleaned by housekeeping, then there would be no way for the guest to then re-access the room unless the door was left unlocked by the housekeeping staff. This testimony was undisputed. Further, the testimony of the Inn staff reflected their understanding that the policy on securing unoccupied rooms was meant to promote the cleanliness of the Inn as well as the safety of the guests. Inn manager Mitzi Hammonds agreed on cross-examination that an unoccupied, unsecured guest room could pose a safety risk because a guest could be attacked or a child could be molested in the room.

The testimony also reflected that the railings of the balcony were not compliant with the applicable building codes. Indeed, the Commissioner heard testimony from Chris Bainbridge, who was the Director of Codes Enforcement for the State during September of 2012. Mr. Bainbridge opined that although the A-wing balcony rails were replaced in 2004, they were not the forty-two inches in height that would have been required by the applicable building code at that time. Rather, the rails that were installed in 2004 were only thirty-six inches in height, six inches shorter than required. Accordingly, there was no dispute at trial that the rails of the A-wing balconies were not compliant with the relevant building codes at the time of Daniel's fall. The State, however, produced evidence that considering Daniel's height and weight at the time of the accident, Daniel would still have

had to intentionally climb a thirty-six inch balcony in order to fall over it. Stated differently, regardless of the balcony being six-inches short of complying with the building codes, Daniel would not have been able to fall over it without first climbing on top of it. The evidence regarding Daniel's height, weight, and center of gravity was not disputed.

The Commissioner entered an eighty-nine page written ruling on April 6, 2018. Therein, the Commissioner concluded that the Kims' case should be dismissed because they failed to establish the essential element of proximate cause. Specifically, the Commissioner determined that "[t]his claim arose because Daniel Kim climbed on top of the balcony railing and fell. Applying the reasonably prudent person standard of care, the occurrence of such an event was simply not foreseeable." The Kims' case was dismissed in its entirety, and a timely notice of appeal to this Court was filed on April 26, 2018.

*Id.* On appeal, the case was remanded due to deficient legal conclusions regarding Plaintiffs' primary argument—that the Inn's act of leaving the guest room door open was the proximate cause of Daniel's fall. Upon remand, the Commissioner entered a ninety-five page supplemental order of dismissal on May 20, 2019, and held, in pertinent part, that "Defendant leaving the guest room door and balcony door ajar was a factor, but that Daniel['s] fall as a result of the doors being left open was not a reasonably foreseeable probability;" that it was "undisputed that no guest had ever fallen from a balcony prior to September 3, 2012;" and that "the fall sustained by Daniel [] was not an accidental fall," but was an "affirmative act" in which he climbed on top of the balcony railing. As such, the Commissioner determined that Plaintiffs failed to establish that the Inn's act of leaving the door unlocked was a proximate cause of Daniel's fall:

Daniel Kim fell because he undertook an affirmative act by climbing on top of the balcony railing. It was not a reasonably foreseeable probability that a small child could fall from the balcony after gaining access to a room. It was certainly not foreseeable a child would fall after gaining access to a room by climbing onto the balcony railing. A reasonably foreseeable probability is the standard for assessing the element of proximate cause which is necessary to impose liability in a negligence case. *King v. Anderson, County*, 419 S.W.3d 232, 250 (Tenn. 2013). The evidence in the record confirms Daniel Kim's fall was not a reasonably foreseeable probability, therefore, the element of proximate cause has not been proven.

*Id.* The Kims once again timely appealed to this Court.

The issue presented for review in this case is whether the evidence preponderates against the Commissioner's finding that the State's negligence was not a proximate cause of Daniel's injuries.[1]

## STANDARD OF REVIEW

The present case was tried before the Claims Commissioner, and appeals from decisions of the Commissioner are governed by the Tennessee Rules of Appellate Procedure. **Bowman v. State**, 206 S.W.3d 467, 472 (Tenn. Ct. App. 2006) (citing Tenn. Code Ann. § 9-8-403). "Accordingly, because the Claims Commission hears cases without a jury, this court reviews the Commissioner's factual findings and legal conclusions using the now familiar standard in Tenn. R. App. P. 13(d)." **Id.** The Commissioner's findings of fact are therefore reviewed *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. **Id.** (citing **Beare Co. v. State**, 814 S.W.2d 715, 717 (Tenn. 1991); **Dobson v. State**, 23 S.W.3d 324, 328–29 (Tenn. Ct. App. 1999); *Sanders v. State*, 783 S.W.2d 948, 951 (Tenn. Ct. App. 1989)). "For the evidence to preponderate against a [] finding of fact, it must support another finding of fact with greater convincing effect." **Watson v. Watson**, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing **Walker v. Sidney Gilreath & Assocs.**, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); **The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.**, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)). The legal conclusions of the Commissioner, however, are afforded "no similar presumption of correctness." **Bowman**, 206 S.W.3d at 472 (citing **Turner v. State**, 184 S.W.3d 701 (Tenn. Ct. App. 2005); **Crew One Productions, Inc. v. State**, 149 S.W.3d 89, 92 (Tenn. Ct. App. 2004); **Belcher v. State**, No. E2003-00642-COA-R3-CV, 2003 WL 22794479, at *4 (Tenn. Ct. App. Nov. 25, 2003)).

## DISCUSSION

This is an action for negligence, in which the outcome is based primarily upon whether the Kims established that the Inn's failure to ensure that its room and balcony door were locked was the proximate cause of Daniel's injuries.[2] We will begin our discussion

---

[1] Plaintiffs stated their second issue as follows: Whether a notice of appeal from the Claims Commission is properly filed with the clerk of the appellate court or the clerk of the Claims Commission. The record shows that Plaintiffs filed a notice of appeal in both places, and it is undisputed that Plaintiffs properly filed. *See generally* Tenn. Code Ann. § 9-8-403(a)(1) (providing that rulings of individual commissioners are appealed to the Tennessee Court of Appeals "pursuant to the same rules of appellate procedure which govern . . . appeals from final judgments in trial court civil actions"); Tenn. Code Ann. § 9-8-403(k) (providing that claimants appealing under subsection (a)(1) also file the notice of appeal with the clerk of the claims commission).

[2] While the Kims state their issue as whether the evidence preponderates against the Commissioner's finding regarding proximate cause, generally, they do not make any arguments with respect to the Commissioner's determination that the deficient balcony railing was not the proximate cause. Therefore, we decline to address it. *See* Tenn. R. App. P. 27(a)(7); *see also* **Hodge v. Craig**, 382 S.W.3d

with an overview of the law of negligence, and, particularly, proximate cause; then we will address whether the evidence preponderates against the Commissioner's finding that Daniel's fall was not foreseeable such that the State could be held liable for his injuries.

The following elements are essential to a negligence claim: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995) (citing *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993); *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993); *McClenahan v. Cooley*, 806 S.W.2d 767, 774 (Tenn. 1991)). A plaintiff must prove both causation in fact and proximate cause by a preponderance of the evidence. *Kilpatrick*, 868 S.W.2d at 598.

The Commissioner held, and the parties do not dispute, that the State owed a duty of reasonable care to the Kims to ensure that the doors to unoccupied rooms were secured and that the balcony railing was built in compliance with the applicable building codes; that the State breached each of those duties; that the Kims suffered injuries and damages; and that "but for [the State] leaving the doors to the guest room and balcony ajar Daniel Kim would not have gained access to the room or balcony." Therefore, the only remaining element in dispute is that of proximate cause.

When considering proximate cause, we ask whether the law should "extend responsibility" for negligent conduct "to the consequences that have occurred." *King v. Anderson Cty.*, 419 S.W.3d 232, 246 (Tenn. 2013) (quoting *Kilpatrick*, 868 S.W.2d at 598). Indeed, "legal responsibility must be limited to those causes which are so closely connected with the result and are of such significance that the law is justified in imposing liability." *Id*. Stated simply, proximate cause "puts a limit on the causal chain" such that even where the defendant's conduct is the cause in fact of the plaintiff's injury, the defendant will not be held responsible "for injuries that were not substantially caused by their conduct or were not reasonably foreseeable results of their conduct." *Id.* at 246–47 (citing *Hale v. Ostrow*, 166 S.W.3d 713, 719 (Tenn. 2005)). Accordingly, our Supreme Court has acknowledged that "proximate causation is the ultimate issue in negligence cases[,]" and that "proof of negligence without proof of causation is nothing." *McClenahan*, 806 S.W.2d at 774 (citations omitted); *King*, 419 S.W.3d at 247. Proximate cause is an issue of fact to be determined by the fact-finder. *McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 905 (Tenn. 1996).

The Tennessee Supreme Court last discussed proximate cause at length in *McClenahan v. Cooley*, 806 S.W.2d 767 (Tenn. 1991). According to the court, a three-pronged test should be used to determine proximate cause:

---

325, 335 (Tenn. 2012).

(1) the tortfeasor's conduct must have been a "substantial factor" in bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence.

*Id.* at 775 (citations omitted). The Commissioner did not make any explicit findings as to the first two elements but determined that the Inn's failure to secure the guest room and balcony doors was not the proximate cause of Daniel's injury because it was not reasonably foreseeable by the State. The Commissioner correctly ruled that in the absence of this element, there can be no proximate cause. *See King*, 419 S.W.3d at 248 ("Foreseeability is the crucial factor in the proximate cause test because, if the injury that gives rise to a negligence case could not have been reasonably foreseen, there is no proximate cause and thus no liability despite the existence of negligent conduct."); *Ray Carter, Inc. v. Edwards*, 222 Tenn. 465, 436 S.W.2d 864, 867 (Tenn. 1969) ("If the injury giving rise to a plaintiff's cause of action was not reasonably foreseeable, then there is no proximate cause and no liability for negligence.); *Richardson v. Trenton Special Sch. Dist.*, No. W2015-01608-COA-R3-CV, 2016 WL 3595563, at *6 (Tenn. Ct. App. June 27, 2016) (holding that "causation cannot exist without foreseeability"). As a result, both parties devote much of their arguments to competing positions as to how the concept of foreseeability applies to the facts in the case-at-bar.

Foreseeability, however, is no simple concept to master. To at least one legal scholar, foreseeability represents "a scourge, and its role in negligence cases is a vexing, crisscrossed morass." W. Jonathan Cardi, *Purging Foreseeability: The New Vision of Duty and Judicial Power in the Proposed Restatement (Third) of Torts*, 58 Vand. L. Rev. 739, 740 (2005); *see also, e.g.*, Russ VerSteeg, *Perspectives on Foreseeability in the Law of Contracts and Torts: The Relationship Between "Intervening Causes" and "Impossibility"*, 2011 Mich. St. L. Rev. 1497, 1498 (2011) ("Foreseeability is a complex and nuanced concept. Commentators have suggested various colorful phrases to describe the opacity of the term, such as referring to foreseeability as 'the dark matter of tort' and 'strawberry shortcake.'") (footnotes omitted); Benjamin C. Zipursky, *Foreseeability in Breach, Duty, and Proximate Cause*, 44 Wake Forest L. Rev. 1247, 1249 (2009) ("At a very general level, foreseeability, with its triple role and its accordion-like meaning, is clearly one of the murky concepts that has led students and scholars to think that negligence law lacks conceptual integrity. . . ."). Tennessee's law on foreseeability in this context is similarly vexing.

In adopting the three-part test above nearly thirty years ago, the Tennessee Supreme Court offered the following observations:

The foreseeability requirement is not so strict as to require the tortfeasor to

- 8 -

foresee the exact manner in which the injury takes place, provided it is determined that the tortfeasor could foresee, or through the exercise of reasonable diligence should have foreseen, the general manner in which the injury or loss occurred. "The fact that an accident may be freakish does not per se make it unpredictable or unforeseen." It is sufficient that harm in the abstract could reasonably be foreseen. Finally, proximate causation is a jury question unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome.

*McClenahan*, 806 S.W.2d at 775 (citations omitted).

Proximate cause has been considered by our high court on a number of occasions in the decades since *McClenahan*. The *McClenahan* three-part test has been continually cited by the Tennessee Supreme Court as the correct inquiry in determining proximate cause. *See, e.g*, *Cotten v. Wilson*, 576 S.W.3d 626, 638 (Tenn. 2019) (utilizing the *McClenahan* three-part test); *King v. Anderson Cty.*, 419 S.W.3d 232, 247 (Tenn. 2013) (citing a later Tennessee Supreme Court case that utilizes the three-part test). However, not a single Tennessee Supreme Court opinion following *McClenahan* has ever cited the broader pronouncement therein that only harm in the abstract must be foreseen. *But see Doe v. Linder Const. Co.*, 845 S.W.2d 173, 199 (Tenn. 1992) (Daughtry, J., dissenting) (quoting *McClenahan*, 806 S.W.2d at 775) (cited only in the dissent); *see also, e.g.*, *Potter v. Ford Motor Co.*, 213 S.W.3d 264, 276 (Tenn. Ct. App. 2006) (quoting *McClenahan*, 806 S.W.2d at 775) (agreeing that harm in the abstract could have been foreseen); *Rathnow v. Knox Cty.*, 209 S.W.3d 629, 633 (Tenn. Ct. App. 2006) (quoting *McClenahan*, 806 S.W.2d at 775) (stating the general rule that harm may be foreseen in the abstract). Nor has the Tennessee Supreme Court ever again explicitly stated that foreseeability in the proximate cause context does not require the defendant to foresee the exact injury or its extent. *But see Borne v. Celadon Truc Servs., Inc.*, 532 S.W.3d 274, 301 (Tenn. 2017) (affirming a jury instruction including this language—that the exact manner of the injury need not be foreseeable—where the argument on appeal did not concern this specific language).

Regardless of this fact, the State concedes in this case that it need not have foreseen the exact manner in which the injury took place in order for proximate cause to be found. *See Bara v. Clarksville Memorial Hosp. Systems, Inc.*, 104 S.W.3d 1, 12 (Tenn. Ct. App. 2002) (citing *McClenahan*, 806 S.W.2d at 775) ("The foreseeability requirement is not so strict as to require the tortfeasor to foresee the exact manner in which the injury takes place, provided it is determined that the tortfeasor could foresee, or through the exercise of reasonable diligence should have foreseen, the general manner in which the injury or loss occurred."). As such, we need not evaluate the continued viability of that rule in this particular case. The State contends, however, that the injury must have been more than a remote possibility, but "'a reasonably foreseeable probability.'" *King*, 419 S.W.3d at 248

(quoting ***West v. E. Tenn. Pioneer Oil Co.***, 172 S.W.3d 545, 551 (Tenn. 2005)). In other words, "[a] risk is foreseeable if a reasonable person could foresee the probability of its occurrence or if the person was on notice that the likelihood of danger to the party to whom is owed a duty is probable.'" ***Id.*** (quoting ***Downs ex rel. Downs v. Bush***, 263 S.W.3d 812, 820 (Tenn. 2008)).

Keeping this framework in mind, we address the Kims' contention that the evidence preponderates against the Commissioner's finding because the testimony established that there was a significant gravity of harm that resulted from the State's failure to secure the vacant room, that the risk of children falling from balconies is well-known, that the foreseeability requirement for proximate cause does not require the State to foresee the exact injury, and that public policy imposes a heightened duty on innkeepers who invite children to their establishments. The Kims also assert that the Commissioner interpreted the law of foreseeability, as it relates to proximate cause, too narrowly. We will address each argument in turn.

The Kims first argue that the increased gravity of harm associated with a child having unsupervised access to a balcony and, subsequently, falling, decreased the foreseeability needed to impose liability. Upon our review of the Kims' argument and the applicable law, we agree with the State's assertion that the Kims' argument in this regard conflates foreseeability for the purpose of determining whether a duty exists with foreseeability for the purpose of establishing proximate cause. The Supreme Court in ***Satterfield v. Breeding Insulation Co.***, explicitly stated that "[t]he foreseeability and gravity of the harm are linked insofar as the degree of foreseeability needed to establish a duty is inversely proportional to the magnitude of the foreseeable harm." 266 S.W.3d 347, 365 (Tenn. 2008) (citing ***Turner v. Jordan***, 957 S.W.2d 815, 818 (Tenn. 1997)). The Kims attempt to apply this same standard in the context of proximate cause by citing to this Court's reference to Justice Holder's dissent in ***Satterfield***, in which she stated that "foreseeability in duty and foreseeability in causation are so inseparable that it is impossible to make a distinction" between the two, to demonstrate that the court should find the same "link" between foreseeability and gravity of harm when determining proximate cause. ***Stockton v. Ford Motor Co.***, No. W2016-01175-COA-R3-CV, 2017 WL 2021760, at *14 (Tenn. Ct. App. May 12, 2017) (quoting ***Satterfield***, 266 S.W.3d at 377 (Holder, J. dissenting)). This argument is inconsistent with the majority opinion in ***Satterfield***, in which the Supreme Court distinguished foreseeability in the context of duty and foreseeability in the context of proximate cause as two separate determinations. ***Id.*** at 366 ("The role that the concept of foreseeability plays in the context of a court's determination of the existence and scope of a duty differs from the role the concept plays when the fact-finder is addressing proximate causation."). The Kims fail to cite to a single case that has specifically held that the gravity of harm should be considered in the context of proximate cause. Therefore, this argument is without merit.

Of course, the ***Satterfield*** opinion is primarily focused on the element of duty. As

- 10 -

such, it provides very little specific guidance as to how the proximate cause analysis should be applied other than its statement that the proximate cause analysis and the duty analysis are distinct. Rather, the *Satterfield* majority merely cites, without explanation, a number of cases that likewise support a distinction. 266 S.W.3d at 366 n.41. The *Satterfield* concurrence reads these cases as creating a distinction between the foreseeability "of a general threat of harm" in the duty analysis, versus the foreseeability "of the specific harm suffered by the plaintiff" in the proximate cause analysis. *Id.* at 378 (Holder, J., concurring and dissenting). If this characterization of *Satterfield* is correct, it appears that the Tennessee Supreme Court intends to depart from the broader proximate cause jurisprudence of *McClenahan*. Other cases have cited the dissent's characterization of the distinction. *See Marla H. v. Knox Cty.*, 361 S.W.3d 518, 532 (Tenn. Ct. App. 2011) (citing *Satterfield*, 266 S.W.3d at 376 (Holder, J., concurring and dissenting)) ("Courts evaluating foreseeability in the context of duty must take a more general approach to the likelihood of harm rather than determining the foreseeability of the specific harm suffered by the plaintiff.").[3] Regardless, as previously discussed, the State in this case concedes that it need not have foreseen the exact injury at issue, essentially consistent with *McClenahan*. *See Bara*, 104 S.W.3d at 12 (citing *McClenahan*). Moreover, some of the cases cited in the subject footnote stand for the same or a similar proposition. *See Satterfield*, 266 S.W.3d at 366 n.41 (citing *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 503 (Fla. 1992) (citing *Restatement (Second) of Torts* § 435 (1965)) ("[I]t is immaterial that the defendant could not foresee the *precise* manner in which the injury occurred or its *exact* extent."); *Bodkin v. 5401 S.P., Inc.*, 329 Ill. App. 3d 620, 629, 768 N.E.2d 194, 203 (2002) (emphasis added) (internal citation omitted) ("[A] finding that a defendant owed a duty to a plaintiff depends on the reasonable foreseeability of an injury to the particular plaintiff. By contrast, a finding that a defendant's conduct proximately caused a plaintiff's injury depends on the reasonable foreseeability of *the type* of injury sustained by the plaintiff.")). Given the State's concession in this case, however, any suggestion that the proximate cause analysis was materially altered by the *Satterfield* majority will not be resolved by this Opinion.

We therefore proceed to review the facts relied upon by the Kims in support of their argument that Daniel's injuries were foreseeable. In particular, the Kims rely on the following testimony: the concession by Gary McEntire, the general manager of the Inn, that falling from the fifth floor might cause serious injury or death, Ms. Wright's statement that she would be "concern[ed] about serious injury or death" if she fell from the fifth floor, Ms. Brake and Ms. Hammonds' statement that they would fear being seriously injured if they fell, and Mr. Tubbs' statement that a fall from that height would make the likelihood of serious injury more probable. However, the testimony only recognizes that a fall like Daniel's carries a risk of serious injury, not that this harm was the foreseeable result of the Inn's negligence in allowing the hotel room door to remain unlocked. As a legal scholar previously quoted by this Court explained,

---

[3] Because the court in *Marla H.* found that the defendant did not breach its duty, the court did not fully analyze the proximate cause issue. *Id.* at 538.

Proximate cause . . . focuses on the nature and extent of the connection between a defendant's unreasonable conduct and the plaintiff's injury and cuts off liability at the point where "the harm that resulted from the defendant's negligence is so clearly outside the risks created that it would be unjust or at least impractical to impose liability. . . ."

*Stockton v. Ford Motor Co.*, No. W2016-01175-COA-R3-CV, 2017 WL 2021760, at *11 (Tenn. Ct. App. May 12, 2017) (quoting Cardi, *supra*, at 747); *cf. Lake v. Memphis Landsmen, LLC*, No. W2011-00660-COA-RM-CV, 2014 WL 895519, at *6 (Tenn. Ct. App. Mar. 7, 2014) (holding that proximate cause was met when the plaintiff's "injuries were a reasonably foreseeable result of [the defendant's] negligence"). In other words, the negligence must be "closely connected with the result." *King*, 419 S.W.3d at 246. Thus, this evidence does not preponderate against the Commissioner's finding that the Inn's negligence was not the proximate cause of the injury.

Indeed, some of the testimony cited by the Kims actually undermines their argument. In particular, both Ms. Wright and Ms. Brake stated their belief that the occurrence of such an accident was not likely prior to the incident at issue. Ms. Hammonds testified that a fall from the Inn's fifth floor balcony could happen and was conceivable; she also agreed that the Inn would not want an unsupervised child to fall from a balcony. However, she explicitly stated that such an injury was not foreseeable prior to the accident. She stated that she was not aware of an instance of a guest "being injured or otherwise being unsafe" at the Inn in the guest rooms; and that the reason for the Inn's policy was "more due to the concern of the room being clean for the safety of belongings, not for the safety of a guest." The other staff made similar statements in their testimony.

When analyzing the foreseeability of the harm suffered by the plaintiff, "[c]ourts may consider, 'among other things, the presence or absence of prior similar incidents.'" *Marla H.*, 361 S.W.3d at 533 (quoting *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 365 (Tenn. 2009) (citing *McClung*, 937 S.W.2d at 901)). For example, in a very recent case, this Court held that evidence "that there were no reported injuries in the same manner that the child at issue had been injured" militated against a finding that the injury was foreseeable. *Landry v. Sumner Cty. Bd. of Educ.*, No. M2019-01696-COA-R3-CV, 2020 WL 3550052, at *6 (Tenn. Ct. App. June 30, 2020). Moreover, the simple fact that such an injury was possible or conceivable is insufficient to establish that it was foreseeable. *See King*, 419 S.W.3d at 248; *Fischer Lime & Cement Co. v. Sorce*, 4 Tenn. App. 159, 164 (Tenn. Ct. App. 1926) ("It would be unreasonable to require them, before doing or refraining from doing a particular act, to exhaust the field of speculation concerning every possible or conceivable consequence which might result from their conduct."); *cf. Satterfield*, 266 S.W.3d at 367 (holding, in the context of duty, that "because almost any outcome is possible and can be foreseen, the mere fact that a particular outcome might be conceivable is not sufficient to give rise to a duty."). As such, the testimony

- 12 -

establishing that no such injury had ever previously occurred but that such an injury was conceivable does not preponderate against the Commissioner's finding of no proximate cause in this case.[4]

The Kims also assert that the risk of children falling from balconies was well-known, and, therefore, should have been foreseen by the State; they cite to numerous cases from other jurisdictions to demonstrate that there is a generally recognized danger in children having unsupervised access to balconies and as evidence that Daniel's harm was foreseeable. We respectfully disagree with this reasoning. In order to prevail on this issue, the Kims had to demonstrate that the harm was "'not just a remote possibility, and that some action within the defendant's power more probably than not would have prevented the injury.'" *King*, 419 S.W.3d at 248. Moreover, we must always keep in mind that proximate cause involves the link between the negligence committed by the defendant and the harm that resulted. Proximate cause will be found if "some such harm of a like general character was reasonably foreseeable as a likely result of defendant's [specific act of negligence]." *Spivey v. St. Thomas Hosp.*, 31 Tenn. App. 12, 28–29, 211 S.W.2d 450, 457 (Tenn. Ct. App. 1947).

Respectfully, we are not persuaded by the cases cited by the Kims. For one, some of the cited cases involve a different type of negligence, the failure to supervise a child. *See In re Juana P.*, No. B236678, 2012 WL 1925649, at *1 (Cal. Ct. App. May 29, 2012) (juvenile court case after child fell off balcony while in mother's care) (unpublished/noncitable); *In re J.P.*, No. 02-12-00121-CV, 2012 WL 5949492, at *4 (Tex. App. Nov. 29, 2012) (termination of parental rights after child fell off second floor balcony). The Kims have not alleged that the State failed in any duty to supervise Daniel. As such, cases that suggest that it is reasonably foreseeable for a fall to result from a lack of supervision are inapposite to the case-at-bar. Another case involved a broken locking mechanism allowing a child access to a balcony, combined with a poorly designed balcony that permitted the child to easily climb over it. *See Adekanbi v. Purdue Leasing Liab. Co.*, 12 Misc. 3d 1096, 1100, 821 N.Y.S.2d 373 (Sup. Ct. 2006) (involving a balcony design that was "ladder like"). While the Kims argued in the proceedings before the Commissioner that the State was negligent in the design of its balcony railing,[5] they have apparently

---

[4] We concede that Ms. Hammonds provided somewhat equivocal testimony on this issue. The Commissioner did not find that this testimony established proximate cause. Giving the Commissioner's findings the proper deference, we cannot conclude that this evidence preponderates against the Commissioner's findings. Rather, a review of her entire testimony indicates that Ms. Hammonds now believes that locking vacant rooms will prevent unsupervised children from falling off balconies. Such a concession, however, does not establish foreseeability in this matter. Foreseeability must be determined "from the vantage point available to the defendant at the time the negligent conduct occurred." *Rathnow*, 209 S.W.3d at 633. In determining the foreseeability of an injury, "it is important that courts not indulge in hindsight." *Cotten*, 576 S.W.3d at 651.

[5] Specifically, the Kims argued that the balcony did not meet applicable building codes for height. The Commission found, however, that the Kims failed to show proximate cause, as Daniel was still required to climb on top of the balcony regardless of the fact that it was a few inches shorter than building codes

abandoned that argument on appeal. And the proof shows that the balcony railing was tall enough in this case that Daniel was required to purposefully climb over it; indeed, he may have even been required to utilize the balcony furniture to do so.[6] Finally, the sole case cited by the Kims that ultimately found that an injury was foreseeable in this context considered the issue only in the context of the duty owed and did not in any way address whether the child's injuries were the proximate result of the defendant's negligence. *See Lawrence v. La Jolla Beach & Tennis Club, Inc.*, 231 Cal. App. 4th 11, 31, 179 Cal. Rptr. 3d 758, 773 (2014).

We acknowledge that the Inn's act of securing the vacant guest room would have, more probably than not, prevented Daniel's fall. However, the fact that there have been instances in other jurisdictions, in which children have suffered injuries under somewhat similar circumstances, only demonstrates that such harms are generally possible or conceivable, not that they were a likely result of the State's negligence in leaving a guest room unsecured. Other Tennessee cases bear this out. For example, in the recent case of *Cotten v. Wilson*, 576 S.W.3d 626 (Tenn. 2019), the Tennessee Supreme Court considered whether an individual's death by suicide was the reasonably foreseeable result of the defendant's failure to secure his guns. *Id.* at 629. The court considered a number of cases involving the foreseeability of suicide. *Id.* at 639–648. Indeed, the cases in which this issue had arisen were so numerous that a specific rule had been crafted, and then various exceptions carved out, in order to determine the foreseeability of suicide. *Id.* The fact that other cases had considered this same type of general injury, however, did not persuade our high court that the injury was a foreseeable result of the defendant's negligence. Rather, the court considered the particular facts involved to determine whether the injuries alleged were foreseeable to the specific defendant at issue. While common sense may dictate that certain injuries are generally foreseeable, *Cotten* must be read to stand for the proposition that the particular facts involved are highly relevant in determining foreseeability. Indeed, other Tennessee law supports such a reading, as it requires that foreseeability be determined "from the vantage point available to the defendant at the time the negligent conduct occurred." *Rathnow*, 209 S.W.3d at 633. The fact that other cases have involved somewhat similar accidents is therefore insufficient to establish the foreseeability of

permitted.

[6] According to the Commissioner's factual findings, which are not disputed on this point:

> Although there was a small chair and table on the balcony he does not know if he used either of them to climb up. He did recall that he climbed to the top of the rail. He explained that he climbed to the top of the rail because while on the balcony he heard his dad's voice but he could not see him through the railing. He wanted to look for his dad so he had to climb on top of the railing for his dad to see him because he was too short to look over it. He did not know if he could have simply stood on the table or chair and been high enough to see over the railing without climbing onto the railing.

(Internal citations omitted). The balcony at issue was made of a solid, vinyl covered railing. There was no allegation that this design made it easier for a child to climb the railing.

Daniel's injuries in this particular case.

The Kims assert, however, that they were not required to prove that Daniel's specific injury was foreseeable, and that they just had to establish that some harm to children, in the abstract, was foreseeable as a result of the Inn leaving vacant rooms unsecured. *See* discussion of *McClanahan*, *supra.* The State contends that the Kims' focus is too broad and asserts that the Commissioner correctly found that proximate cause was not established in this case. We agree that the Kims have failed to rebut the presumption of correctness that attached to the Commissioner's finding that proximate cause was not established. *Watson*, 196 S.W.3d at 701.

Importantly, the Tennessee Supreme Court has held that "the particular harm need not have been foreseeable [only] if another "harm of a like general character was reasonably foreseeable.'" *Moon v. St. Thomas Hosp.*, 983 S.W.2d 225, 229 (Tenn. 1998) (quoting *Spivey*, 211 S.W.2d at 457) (holding that because evidence was presented that injury due to impairment of a tube was foreseen, whether injury due to severing the tube was foreseeable was a question for the jury). And as previously discussed, the Tennessee Supreme Court has required more than a remote possibility for a negligent act to be deemed the proximate cause of any injury. *King*, 419 S.W.3d at 248. In a different context, we have held that a cause is remote when it is as "too far removed as to time or place, or causative force, to be a direct or proximate cause of the accident." *Mansfield v. Colonial Freight Sys.*, 862 S.W.2d 527, 532 (Tenn. Ct. App. 1993) (involving contributory negligence, which has been abrogated in Tennessee); *see also Stockton*, 2017 WL 2021760, at *12 (quoting Cardi, *supra*, at 749) (stating that the rule of proximate cause is "'whether the actual consequences of defendant's conduct were so [] far-removed from the risks that made the actor's conduct negligent that the defendant, though blameworthy, should not be held liable'"). Other courts have recognized the general principle that "some negligent conduct may be 'too attenuated' to constitute proximate cause[.]" *Windrum v. Kareh*, 581 S.W.3d 761, 778 (Tex. 2019), *reh'g dismissed* (May 24, 2019). Moreover, the Tennessee Supreme Court has specifically held that a defendant "'has much less reason to anticipate intentional misconduct than negligence[.]'" *Cotten*, 576 S.W.3d at 647–48 (quoting *Rains v. Bend of the River*, 124 S.W.3d 580, 593 (Tenn. Ct. App. 2003)).

Thus, the Inn was not required to be hyper-vigilant of all types of harm that could manifest through the misconduct of its guests, but only those that were of like character to other harms that should have been reasonably foreseen. And the Kims had the responsibility to present sufficient evidence to support this element and to demonstrate that the evidence preponderates against the Commissioner's finding that the proof was insufficient. *Kilpatrick*, 868 S.W.2d at 598; *Watson*, 196 S.W.3d at 701. We cannot conclude that the Kims met this burden.

In this case, the Commissioner explicitly found, and the Kims do not dispute, that Daniel "would not have fallen from the balcony had he not deliberately climbed on top of

the balcony railing." Although we do not consider the exact series of events that led to Daniel's injuries, the fact that his injury resulted from both his caregivers' failure to supervise him and his own decision to climb atop the railing cannot be extricated from the analysis.[7] And the fact that Daniel's injuries resulted from his own action in deliberately evading the safety features put in place to protect those on the Inn's balcony certainly factors into an analysis of whether a fall from that balcony by an unsupervised child was foreseeable. Other cases that do not involve a child deliberately evading the very safety features put in place to guard against accidental harm are therefore inapposite. *See, e.g., Crescent Amusement Co. v. Byrne*, 3 Tenn. App. 425, 428 (1926) (involving injuries that occurred when a child leaned against a window that was unlatched and fell through). Thus, while the Inn's negligence in leaving open the room (and perhaps also the balcony door) was a substantial factor in Daniel's injuries, "the causative force" between the Inn's negligence and Daniel's injuries is tenuous. Moreover, the evidence presented indicates that the foreseeable harms that could result from leaving a guest room unlocked were not of a like general character to the harm that occurred in this case. Under these circumstances, the Kims simply have not shown the evidence weighs in favor of a finding that a reasonable person would foresee that a scenario of like general character was likely to occur. *See Bradshaw v. Holt*, 200 Tenn. 249, 257, 292 S.W.2d 30, 34 (1956) (holding that the standard is what "might and ought to have been foreseen by the wrongdoer as likely to flow from his act."); *Spivey*, 29, 211 S.W.2d at 457 (requiring the plaintiff to prove that "harm of a like general character was reasonably foreseeable as a likely result of defendant's failure to use due care").

We also cannot accept the Kims' argument that we should impose "a heightened standard of care on innkeepers whose establishments invite children[.]" In support of this argument, they reference the attractive nuisance and playground doctrines, only noting that these doctrines are "premised on an unsupervised child confronting a potentially dangerous situation created by the defendant," and the case of *Whirley v. Whiteman*. Regardless of whether a heightened standard of care could be applicable under either the playground doctrine or the attractive nuisance doctrine, neither of these theories was advanced at trial in this case. As such, any arguments that they are applicable are waived. *See Barnes v. Barnes*, 193 S.W.3d 495, 501 (Tenn. 2006).

We likewise conclude that the *Whirley* opinion does support the imposition of a heightened duty of care in this case. According to the portion of the opinion quoted by the Kims:

> [A]lthough a child of tender years be in the highway, through the fault
> or negligence of his parents, and so be improperly there, yet if he be injured

---

[7] Indeed, even the Kims' reply brief characterizes Daniel's fall as a combination of events, all of which they assert were foreseeable: "a child getting separated from his parents, a child trying to return to the room where he had stayed, or an unsupervised child climbing a balcony."

- 16 -

through the negligence of the defendant, he is not precluded from redress; that, in such case, the defendant is bound to a proportionate degree of watchfulness; and what would be but ordinary neglect in regard to one whom the defendant supposed a person of full age and capacity, would be gross neglect as to a child, or one known to be incapable of escaping danger.

***Whirley v. Whiteman***, 38 Tenn. 610, 621–22 (Tenn. 1858), *abrogated by **McIntyre v. Balentine***, 833 S.W.2d 52 (Tenn. 1992). Regardless of the continuing viability of ***Whirley*** given the adoption of comparative fault, we conclude that its holding is inapposite to the case-at-bar.

Courts interpreting the ***Whirley*** decision have held that a heightened standard of care is applicable when driving a vehicle. *See, e.g., **Eden W. ex rel. Evans v. Tarr***, 517 S.W.3d 691, 697–99 (Tenn. Ct. App. 2015) (describing the rule as imposing on drivers a "heightened duty to an unaccompanied child"). This heightened duty is relaxed, however, when the child is accompanied by an adult. ***Id.*** (citing ***Russell v. Anderson Cnty.***, No. E2010-00189-COA-R3-CV, 2011 WL 486900, at \*4 (Tenn. Ct. App. Feb. 11, 2011) (citations omitted)) ("[A] driver's duty of care to anticipate childish impulses is not as high when a child is accompanied by an adult as it is when a child is not accompanied by an adult."). This case clearly does not involve an injury caused by the driver of a vehicle. And the Commissioner explicitly found that the employees of the Inn expected that children would be supervised while present. Indeed, the church group and the Inn set aside a specific space for this very purpose. Even Daniel's parents did not expect that he would return unsupervised to the guest room. If the ***Whirley*** rule were applicable, then, it is difficult to conclude that the evidence preponderates against the Commissioner's finding of no liability in this case.

Even more importantly, however, the ***Whirley*** case has not been held to create a heightened standard of care in all circumstances involving children. Rather, on many occasions, we have expressly held that defendants who regularly interact with children are not insurers of their safety. *See, e.g., **Denson v. Dr. Benjamin***, No. 01A019810CV00571, 1999 WL 824346, at \*3 (Tenn. Ct. App. Aug. 12, 1999) (citing ***Roberts v. Robertson Cty. Bd. of Educ.***, 692 S.W.2d 863, 870 (Tenn. Ct. App. 1985)) ("[O]ur courts have stated more than once that schools are not expected to be insurers of the safety of children while they are at school."); ***City of Kingsport v. Lane***, 35 Tenn. App. 183, 190, 243 S.W.2d 289, 292 (1951) (involving municipalities); ***Town of Clinton v. Davis***, 27 Tenn. App. 29, 36, 177 S.W.2d 848, 851 (1943) (involving electric companies). The Kims do not cite a single case, nor has our research revealed any, in which a heightened standard of care has been imposed on innkeepers to their child guests under ***Whirley***. As an intermediate appellate court, "it is not our prerogative to set policy[.]" ***Vulcan Materials Co. v. Gamble Const. Co.***, 56 S.W.3d 571, 575 (Tenn. Ct. App. 2001) (citing ***Cavender v. Hewitt***, 145 Tenn. 471, 239 S.W. 767, 768 (Tenn. 1922)). We therefore decline the Kims' invitation to essentially

require innkeepers to be the insurers of children's safety.[8]

Though the State did not raise any issues on appeal, they argue, in the alternative, that even if the Commissioner erred in finding that the State was not the proximate cause, the dismissal may still be affirmed because Daniel's intentional act of climbing onto the railing amounts to an intervening cause. Upon our review of the Commissioner's supplemental order, there is no indication that intervening cause was considered or that it was the basis for the dismissal. The State, in acknowledging this, cited to ***Midwestern Gas Transmission Co. v. Bass*** as the premise for its assertion that this Court may affirm the Commissioner's dismissal on this alternative basis. No. M2005-00801-COA-R3-CV, 2006 WL 461135, at *8 (Tenn. Ct. App. Feb. 24, 2006) (noting that, because an argument provided an independent basis for dismissal, this Court "may affirm a judgment on different grounds than those relied on by the trial court when the trial court reached the correct result.") (citing ***Continental Cas. Co. v. Smith***, 720 S.W.2d 48, 50 (Tenn. 1986)). However, our decision to affirm the Commissioner's holding renders a discussion of this alternative basis unnecessary. Therefore, we decline to review this alternative basis.

## CONCLUSION

For the foregoing reasons, we affirm the Commissioner's determination that Daniel's fall was not foreseeable, and, therefore, the Kims failed to establish that the Inn's breach of duty was the proximate cause of his injuries. The judgment of the Tennessee Claims Commission is therefore affirmed and remanded for all further proceedings as may be necessary and consistent with this Opinion. Costs of this appeal are taxed to Appellants

---

[8] Although the Kims have not cited any law to suggest that Tennessee courts have recognized that innkeepers owe a heightened duty of care to children, some authorities suggest that innkeepers do have a "higher" duty in one respect—in that they are excepted from the "no duty" rule based on the existence a special relationship. *See **Satterfield v. Breeding Insulation Co.***, 266 S.W.3d 347, 360 (Tenn. 2008) (noting that some centuries-old authorities "carved out exceptions to the no duty rule based upon the higher duties 'owed by surgeons, apothecaries, solicitors, and innkeepers'"); ***Marr v. Montgomery Elevator Co.***, 922 S.W.2d 526, 529 (Tenn. Ct. App. 1995) (citing ***Lindsey v. Miami Development Corp.***, 689 S.W.2d 856 (Tenn. 1985)) ("The existence of a special relationship may impose a duty where one would otherwise not exist. Examples of relationships for which a duty has been imposed include . . . innkeeper-guest . . . ."). Thus, while it may be argued that innkeepers are in a special relationship with guests so as to create a duty to take affirmative action, "most cases say, with only limited qualifications, that innkeepers owe only a duty of ordinary reasonable care for the guest's personal safety and not an expanded duty at all." Dan B. Dobbs, Paul T. Hayden and Ellen M. Bublick, *The Law of Torts* § 266 (2d ed.); *see also **Kandrach v. Chrisman***, 63 Tenn. App. 393, 398, 473 S.W.2d 193, 195 (Tenn. Ct. App. 1971) ("While an innkeeper is not the insurer of those visiting his guests, he owes at all times to persons properly invited to the hotel, by guests or otherwise, the duty of maintaining his premises in a reasonably safe condition, and of exercising ordinary or reasonable care to protect such persons while in the hotel and in the part thereof open to the public from personal injury through his (the innkeeper's) negligence."). The State conceded in this appeal that it owed a duty to Daniel.

Heun Kim and Joung Kim, for which execution may issues if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE